James BRAIN and Vicky Brain, Plaintiffs-
Appellants and Cross-Respondents,

v.

Cindy L. MANN, Defendant,

Dwight M. SCHMITZ, and Sentry Insurance
Company, Defendants-Respondents and Cross-
Appellants. †

Court of Appeals

*No. 85–0280. Submitted on briefs January 3, 1986.—
Decided February 21, 1986.*
(Also reported in 385 N.W.2d 227.)

† Petition to review denied.

For the plaintiffs-appellants and cross-respondents the cause was submitted on the briefs of *Frisch, Dudek and Slattery,* with *Lynn R. Laufenberg* of counsel, of Milwaukee.

For the defendants-respondents and cross-appellants the cause was submitted on the briefs of *Cook & Franke, S.C.,* with *Robert F. Johnson* of counsel, of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J.   Vicky and James Brain appeal from the judgment entered in this personal injury action and from the order denying their postverdict motions. They claim the trial court erred by excluding

expert testimony on Vicky's lost future earning capacity and by refusing to instruct the jury on this issue. They also contend that the awards for Vicky's pain and suffering and for James's loss of consortium were inadequate, and that a new trial on damages is necessary in the interest of justice. Dwight Schmitz and his insurer, Sentry Insurance Company (Sentry), cross-appeal for a new trial on the question of liability. Sentry questions the sufficiency of the evidence buttressing the jury's apportionment of negligence and asserts trial court error in permitting the investigating police officer to give expert testimony on the appropriate reduced safe speed at the accident site. We affirm the judgment and order on all counts except the ruling on Vicky's lost future earning capacity. Because the trial court improperly struck the entirety of the proffered expert testimony on this subject, we reverse and remand for a new trial limited solely to the issue of damages for Vicky's lost future earning capacity.

Vicky was a passenger in Schmitz's automobile when it collided with a vehicle driven by Cindy Mann. Vicky suffered a compressed vertebra and subsequently brought suit against both Schmitz and Mann. Prior to trial, Mann's insurer paid the policy limits, $25,000, and was dismissed from the case. At trial, the jury found Mann 98% causally negligent and Schmitz 2% causally negligent. The jury awarded $30,000 to Vicky for past and future pain, suffering and disability and granted damages of $1,000 to James for loss of consortium. The trial court answered the subdivisions of the damage question relating to past medical expenses ($1,672.75) and past wage loss ($7,002).

On appeal, the Brains assert that the jury awards were insufficient and that the trial court improperly

precluded jury consideration of a potentially large item of damages ($138,000) for loss of future earning capacity. On cross-appeal, Sentry argues that Schmitz was totally free of negligence. Because a resolution of the negligence issue favorable to Sentry would preclude our consideration of the other claims of error, we turn to that question first.

## APPORTIONMENT OF NEGLIGENCE

The apportionment of negligence is a matter left to the jury, and we will uphold the jury's finding if there is any credible evidence to support it. *Maci v. State Farm Fire & Casualty Co.,* 105 Wis. 2d 710, 718, 314 N.W.2d 914, 919 (Ct.App. 1981). This is particularly true when, as here, the verdict has trial court approval. *Fehring v. Republic Insurance Co.,* 118 Wis. 2d 299, 305, 347 N.W.2d 595, 598 (1984). Matters of weight and credibility are left to the jury's judgment, and where more than one reasonable inference can be drawn from the evidence, this court must accept the inference drawn by the jury. *Poling v. Wisconsin Physicians Service,* 120 Wis. 2d 603, 608, 357 N.W.2d 293, 296 (Ct.App. 1984).

Since both cars involved in the collision carried passengers, the jury heard several versions of the accident. It is uncontroverted that the collision occurred in an area undergoing construction, that the roadway was reduced to one lane of traffic in each direction, and that Mann's car crossed the center line into the path of Schmitz's oncoming vehicle. How long Mann's car was in Schmitz's lane is a matter of dispute, thus bringing into question the amount of care Schmitz exercised in

keeping a proper lookout. When there are inconsistencies between witnesses' testimony, the credibility of the witnesses and the weight of their testimony are matters for the jury. *State v. Daniels,* 117 Wis. 2d 9, 17, 343 N.W.2d 411, 415 (Ct.App. 1983). It is well settled that an appellate court will only substitute its judgment for that of the fact finder when the evidence relied upon by the fact finder is inherently incredible. *Gauthier v. State,* 28 Wis. 2d 412, 416, 137 N.W.2d 101, 104 (1965), *cert. denied,* 383 U.S. 916 (1966). Incredible evidence is evidence which conflicts with nature or with fully established or conceded facts. *Daniels,* 117 Wis. 2d at 17, 343 N.W.2d at 415–16. Because here the testimony of the various witnesses is only contradictory, not incredible, we decline to rule that the jury could not, as a matter of law, assess some negligence to Schmitz on the lookout issue.

■

Even if we assume *arguendo* that the jury did not apportion causal negligence to Schmitz for failure to keep a proper lookout, credible evidence exists that Schmitz was not driving at a reasonably safe speed under the circumstances. The speed limit in the area was thirty miles per hour, and Schmitz testified his car was doing twenty-five to thirty miles per hour. The investigating officer, however, testified that the appropriate safe speed was twenty miles per hour due to the construction. This estimate corresponded to the figure this same officer had entered on his accident report at the time. Sentry objected to this testimony on the grounds that the officer was not qualified to express an expert opinion on safe speed. *See* sec. 907.02, Stats.

The admission of expert testimony is a matter of trial court discretion, but an expert witness may only testify within areas in which he or she is qualified. *Herman v. Milwaukee Children's Hospital*, 121 Wis. 2d 531, 551, 361 N.W.2d 297, 305–06 (Ct.App. 1984). The qualification of an expert depends on experience, not on more formal attributes such as professional licensure. *Karl v. Employers Insurance of Wausau*, 78 Wis. 2d 284, 297, 254 N.W.2d 255, 261 (1977). Here, the trial court properly analyzed the officer's qualifications in terms of police academy training and practical experience in accident investigations. The trial court also correctly distinguished this case, where an officer was being asked his opinion concerning safe speed in a construction zone, from those cases where police officers improperly testified on matters concerning accident reconstruction. *See City of Milwaukee v. Bub*, 18 Wis. 2d 216, 224–25, 118 N.W.2d 123, 127–28 (1962) (police officer not qualified to testify as to point of impact in automobile accident case). Because the determination of appropriate safe speed is a matter which police officers regularly consider in the ordinary course of their duties, and because the testifying officer had the requisite training and experience to render an expert opinion concerning safe speed, the trial court did not err in admitting the officer's testimony.

Because credible evidence was presented on the issues of lookout and safe speed, and because we must view the evidence in the light most favorable to the verdict, *Krueger v. Mitchell*, 112 Wis. 2d 88, 105, 332 N.W.2d 733, 741 (1983), we conclude that the apportionment of 2% of the causal negligence to Schmitz was

not error. We therefore decline to second-guess the jury by remanding this case for a new trial on liability.

## ADEQUACY OF JURY AWARDS

Next we turn to the question of damages. The Brains first contend that a new trial on damages is necessary because the awards for loss of consortium and for pain and suffering were inadequate. In reviewing jury awards, this court may not substitute its judgment for that of the jury but, rather, determines whether the awards are within reasonable limits. *Cords v. Anderson,* 80 Wis. 2d 525, 552–53, 259 N.W.2d 672, 685 (1977). If there is any credible evidence which under any reasonable view supports the jury finding as to the amount of damages, especially when the verdict has the approval of the trial court, this court will not disturb the finding unless the award is so unreasonably low that it shocks the judicial conscience. *Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Construction Corp.,* 96 Wis. 2d 314, 340, 291 N.W.2d 825, 838 (1980) (citations omitted). Where the trial court approves the damages verdict and provides an analysis of the evidence supporting the verdict, we will set aside the verdict only if there is an evident misuse of discretion. *Badger Bearing, Inc. v. Drives & Bearings, Inc.,* 111 Wis. 2d 659, 670, 331 N.W.2d 847, 854 (Ct.App. 1983). Because the trial court here approved the awards without stating its reasons for doing so, we must examine the evidence *ab initio* to determine whether there is any credible evidence to support the jury's verdict. *Id.*

In the accident, Vicky sustained a compression fracture of the first lumbar vertebra. She was hospi-

talized for five days. No surgery was performed then or later; instead, she wore a thoraco-lumbar corset for approximately five months after the collision. Vicky's treating physician testified that the fracture had healed, but that Vicky would be permanently limited in her physical movement in order to avoid back pain and spasms. He identified certain restricted activities such as heavy lifting and repetitive bending and assessed her permanent partial disability as 15% of her entire body. The record, however, contains conflicting testimony as to the frequency and severity of Vicky's back pain and the limitations on her physical activities. As for evidence concerning James's loss of consortium, the record is decidedly succinct. Vicky's injury caused a disruption in the Brains' physical relationship for approximately two months, and James testified that his wife was "bothered and frustrated" during her convalescence period which made her "a pain to be around at that time."

■

We find this evidence sufficient to sustain both challenged awards. The jury could reasonably conclude that Vicky's injury was permanent, but without major residual effects, and that James's loss of consortium was short-lived and minor. Certainly, the amounts awarded do not shock our judicial conscience. We therefore affirm that the jury's damages awards were within reasonable limits.

## FUTURE EARNING CAPACITY

The final claim of error centers on the trial court's decision to strike expert testimony on Vicky's alleged lost earning capacity. When the accident occurred,

Vicky was a twenty-five-year-old special education teacher employed in the public school system. Although she returned to the same job within five months of the accident, she called upon a vocational rehabilitation specialist, Stephen Luesse, to testify as an expert witness on her lost earning capacity.

Luesse's credentials were not challenged, and he gave a detailed analysis of the impact of back injuries on future earning capacity. He cited several negative factors, including discrimination by employers who are wary of hiring people with back problems, tardiness and missed work due to pain, loss of mobility and of promotion potential in the job market (i.e., "lost opportunities"), and comparatively early retirement. When asked to measure Vicky's loss, Luesse responded that it would range from 0% to 15.5%. He based this estimate on two surveys conducted and published by the federal Department of Health and Human Resources. These surveys, entitled "Prevalence of Characteristics of Impairment in the United States," were based on random samples of over forty thousand households and involved people who had all types of spinal impairments short of paralysis. Thus, the surveys neither categorized occupations nor distinguished among the varying degrees of impairment. When Sentry objected that the surveys did not provide an adequate foundation upon which to base an expert opinion, the trial court concurred:

> [T]o permit reliance on a broad ranging statistical survey which has people all the way up to this side of paralysis and people all the way to this side of moving mountains as part of their daily occupation, I think would inject a substantial element of error into any analysis that he would make and accord-

ingly, number one, it does not in my view cross the threshold of reliability which is required for admissibility of opinions and if it did the prejudice to the defendant . . . would outweigh any probative value that it would have, given the infirmity that I've mentioned, under Rule . . . 904.03.

Although Luesse testified that he had experience with people with back injuries similar to Vicky's and that he believed she had suffered a real loss in terms of her future earning capacity, he told the trial court that he was unable to quantify Vicky's loss in percentage terms without using the statistical information contained in the surveys. The trial court then struck all of Luesse's testimony. As a result, Vicky was not able to present another expert witness, an economist, who would put a dollar value on Luesse's percentage estimate. Consequently, the trial court denied Vicky's request for a jury instruction on lost earning capacity. *See* Wis J I—Civil 1705 and 1750A.

■

An award for loss of earning capacity must be supported by expert testimony. *Koele v. Radue,* 81 Wis. 2d 583, 590, 260 N.W.2d 766, 769 (1978). Admission of an expert witness's opinion testimony is a matter of trial court discretion. *Maci,* 105 Wis. 2d at 720, 314 N.W.2d at 920. A discretionary determination, to be sustained, must be based upon facts of record as well as the appropriate and applicable law. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981). A trial court misuses its discretion if it misapplies or misinterprets the law. *Midwest Developers v. Goma Corp.,* 121 Wis. 2d 632, 650, 360 N.W.2d 554, 563 (Ct.App. 1984).

The case law in Wisconsin follows the general rule that in the area of impaired future earning capacity, a trial court must permit the introduction of evidence that is more speculative and uncertain than would be acceptable for proof of historical facts. *Fischer v. Cleveland Punch & Shear Works Co.*, 91 Wis. 2d 85, 100, 280 N.W.2d 280, 287 (1979) (citations omitted). Many elements necessary to determine lost earning capacity cannot be proven with certainty. *Reinke v. Woltjen,* 32 Wis. 2d 653, 660, 146 N.W.2d 493, 497 (1966). Section 907.03, Stats., implicitly recognizes this less rigorous admissibility standard:

> Bases of opinion testimony by experts. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. *If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.* [Emphasis added.] This statutory rule was adopted by our supreme court and in 1974 became part of the Wisconsin Rules of Evidence. *See* 59 Wis. 2d R1–R2, R208–R211 (1974). As the Judicial Council Committee Note to sec. 907.03 explains, the second sentence "broadens the rule of permissible data." *Id.* at R209.

In the instant case, the trial court incorrectly focused on the statistical soundness of the surveys used by Luesse. The crucial factor, disregarded by the trial court, was Luesse's uncontroverted testimony that these surveys were recognized source material upon which vocational rehabilitation consultants customarily rely in the ordinary course of their professional

work. Although no recorded Wisconsin case is directly on point, federal courts have uniformly construed the identical Rule 703 of the Federal Rules of Evidence to require the admission of expert opinion testimony based on surveys, polls or studies. In *Baumholser v. Amax Coal Co.,* 630 F.2d 550 (7th Cir. 1980), the Seventh Circuit Court of Appeals held that testimony of an expert geologist concerning a study he had conducted of structural damage to homes caused by blasting in defendant's coal mine was properly admitted under Rule 703. The court ruled that the study itself was inadmissible because it was not shown that the study was conducted in accordance with generally accepted survey principles and that its results were used in a statistically correct manner. *Id.* at 552. The court stated, however, that the geologist could rely upon the study to support his opinion because he testified that the study was of a type reasonably relied upon by other experts in the field. *Id.* at 553. Similarly, the Third Circuit Court of Appeals reversed a district court's decision to exclude expert opinion evidence on the ground that the opinion was based on materials not reasonably relied upon. *In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238, 275–78 (3rd Cir. 1983), *rev'd on other grounds sub nom. Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 54 U.S.L.W. 4319 (U.S. Mar. 26, 1986).[1] We quote from this decision at length because of its particular relevance to the extended discourses of the trial court in the case at bar:

[1] In this case, the United States Supreme Court granted certiorari on two unrelated issues but denied certiorari on the issue of admissibility of the expert opinion evidence. *Matsushita,* 105 S. Ct. 1863 (1985) (issues summarized in 53 U.S.L.W. 3071–72).

460

The indic[ia] of reliability under Rule 703 is the fact that experts in the field in question rely on the type of data in forming their opinions. As Professor McCormick observed years ago:

It is reasonable to assume that an expert in a science is competent to judge the reliability of statements made to him by other investigators or technicians. He is just as competent indeed to do this as a judge and jury are to pass upon the credibility of an ordinary witness on the stand. If the statements, then, are attested by the expert as the basis for a judgment upon which he would act in the practice of his profession, it seems that they should ordinarily be a sufficient basis even standing alone for his direct expression of professional opinion on the stand.

It was this view which the drafters incorporated in Rule 703. They did so over significant opposition. What the trial court did in effect was to reject the decision of the Judicial Conference, the Supreme Court, and Congress and adhere to an unusually restrictive view as to the basis on which an expert's opinion may be laid.

723 F.2d at 277 (citation and footnote omitted). We also note that the trial court's interpretation of this rule of evidence has been criticized by a leading commentary on the federal evidence rules. 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 703(03) at 703–15 to 703–22 (1985). As they conclude:

The authors have found that the more liberal view works quite well in practice. . . . [I]n jury cases, when the matter is brought to the jurors' attention by a proper instruction, they show a full sensitivity to the problem—in fact often discount-

ing the expert's opinion too much when it is based
on hearsay or secondary evidence of documents or
the like. We ought not assume the jurors are less
intelligent or alert than lawyers or judges. And we
ought not inhibit experts from giving us as much
aid as they can.

*Id.* at 703–18 to 703–19.

Modern Wisconsin cases are in accord. In *State v.
Walstad,* 119 Wis. 2d 483, 518, 351 N.W.2d 469, 487
(1984), our supreme court declared that evidence given
by a qualified expert was admissible "irrespective of
the underlying theory on which the testimony was
based." The court continued:

The fundamental determination of admissibility
comes at the time the witness is "qualified" as an ex-
pert. In a state such as Wisconsin, where substan-
tially unlimited cross-examination is permitted, the
underlying theory or principle on which admissibil-
ity is based can be attacked by cross-examination
or by other types of impeachment. Whether a scien-
tific witness whose testimony is relevant is believed
is a question of credibility for the finder of fact, but
it clearly is admissible.

*Id.* at 518–19, 351 N.W.2d at 487. In *Klingman v.
Kruschke,* 115 Wis. 2d 124, 126–28, 339 N.W.2d 603,
604–05 (Ct.App. 1983), the admission of expert testi-
mony from a chiropractor and a vocational rehabilita-
tion counselor was challenged. The *Klingman* court
stated that where the premises leading to an expert's
conclusion are attacked as inadequate, it is the duty of
opposing counsel to draw out the data that led to the
expert's opinion. *Id.* at 127, 339 N.W.2d at 604.

Here, the trial court improperly preempted de-
fense counsel's role when it observed that Luesse "is

testifying based on a homogenized survey which at this point is not sufficiently detailed to permit the conclusions that he is drawing." The question, however, was not whether the surveys were admissible but whether Luesse's expert opinion was admissible. Under the guidelines established by federal courts, commentators, and the *Walstad* and *Klingman* courts, Luesse could properly base his opinion on the federal agency surveys. The trial court, therefore, erred in striking Luesse's entire testimony from jury consideration. This error prejudiced Vicky's substantial rights, *see* sec. 805.18(2), Stats., because it eliminated an entire item of damages from her case.

Because we previously rejected the Brains' claim that the jury awards were inadequate, we do not remand this case for a new trial on all aspects of damages. Rather, we limit the inquiry to one issue: Vicky's alleged loss of future earning capacity.

*By the Court.*—Judgment and order affirmed in part, reversed in part and cause remanded with directions.