Ronny J. FRAYER, a minor, by his Guardian ad Litem, Carl R. Edenhofer, Jr., his parents, Floyd J. Frayer and Jean Frayer, and American Trust Administrators, Inc., their insurer, Plaintiffs-Appellants,†

v.

Jeffrey D. LOVELL and State Farm Mutual Automobile Insurance Company, Defendants-Third Party Plaintiffs-Respondents,

LOVELL/LOVELL, INC., Defendant-Third Party Plaintiff,

v.

Floyd FRAYER and Jean Frayer, Third Party Defendants.

Court of Appeals

*No. 94–0149. Submitted on briefs September 15, 1994.—Decided January 4, 1995.*

(Also reported in 529 N.W.2d 236.)

†Petition to review denied.

798

800

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Scott R. Joling* of *Joling Edenhofer and Associates, S.C.* of Kenosha.

On behalf of the defendants-third party plaintiffs-respondents, the cause was submitted on the brief of *Jerome A. Hierseman* of *O'Connor & Willems, S.C.* of Kenosha.

Before Anderson, P.J., Brown and Snyder, JJ.

SNYDER, J. Ronny J. Frayer, a minor at the time of the accident giving rise to this action, appeals from a judgment dismissing his personal injury claim against Jeffrey D. Lovell for damages suffered when the minibike he was riding collided with the rear of Lovell's vehicle. Frayer argues that the trial court erred in instructing the jury to weigh his conduct under an adult standard of care instead of the lower standard of care generally applicable to children. Frayer also argues that the trial court erred in refusing to give various requested instructions related to Lovell's conduct.

We conclude that the trial court appropriately held Frayer to the adult standard because Frayer was engaged in adult activity at the time of the accident. We further conclude that the trial court did not otherwise erroneously exercise its discretion in instructing the jury. Accordingly, we affirm the judgment in favor of Lovell.

On July 23, 1989, Frayer, age thirteen years and ten months, was injured when the minibike he was riding collided with the rear end of a vehicle driven by

nineteen-year-old Lovell, who was backing out of his driveway. The accident occurred in a residential subdivision on a roadway that was abutted by a shoulder but no sidewalks. According to a witness, Lovell's vehicle extended into the roadway by approximately one and one-half feet at the time of the accident. Frayer sustained a severe fracture to his right leg in the accident. Neither Frayer nor Lovell recalled seeing the other prior to the accident. Frayer subsequently filed a personal injury suit against Lovell.

The parties disputed both liability and damages. Based on testimony presented at trial, Frayer argued in part that: (1) Lovell was in a hurry to get to work and therefore may not have maintained a proper lookout; (2) Lovell should have been extra cautious when backing because the roads in the subdivision were commonly congested with pedestrians, bicyclists and children playing; and (3) Frayer was traveling at a slow rate of speed and therefore Lovell should have seen him.

In contrast, Lovell presented testimony questioning Frayer's conduct. Lovell's reconstruction expert determined that Frayer had more time to see Lovell than Lovell had to see Frayer. Lovell testified that he looked both ways prior to entering the road and did not see Frayer approaching. On cross-examination, Frayer stated that he did not see Lovell's vehicle move, he took no steps to avoid the collision, such as braking or taking evasive action, and that his parents had repeatedly warned him not to ride the minibike on the road.

Frayer required three surgical procedures over the course of several years, which amounted to medical expenses in the stipulated amount of $20,057.76. Frayer's physician assessed a twenty percent permanent disability to his injured leg based upon

appearance, the fact that the injured leg grew approximately one inch shorter than normal and the potential for future arthritis as a result of the injury. Frayer's vocational expert concluded that Frayer sustained a loss of potential earning capacity of $135,000 over his work life expectancy. In addition, Frayer requested $150,000 for pain and suffering and claimed that he could no longer enjoy the same physical activities he engaged in prior to the accident. Frayer's parents claimed damages in the amount of $12,000 for loss of consortium.

Lovell argued that although Frayer had significant injury, he recovered well, to the point where his physician imposed no restrictions on his activities. Further, Lovell's vocational expert concluded that Frayer sustained no loss of earning capacity because his physician had not imposed any restrictions on his ability to work. Lovell argued that the pain and suffering award should be in the range of $80,000 to $90,000 and that Frayer's parents' award for loss of consortium should be between $5000 and $8000.

At the close of trial, there was substantial discussion over jury instructions. Frayer requested the court to give WIS J I—CIVIL 1010, which sets a separate standard of care for children,[1] and WIS J I—CIVIL 1582, which instructs the jury to consider the different stan-

---

[1] WISCONSIN J I— CIVIL 1010 provides:

**NEGLIGENCE OF CHILDREN**

 As a child, (———) was required to use the degree of care which is ordinarily exercised by a child of the same age, intelligence, discretion, knowledge, and experience under the same or similar circumstances.

 In determining whether (<u>child</u>) exercised this degree of care, you should consider the child's instincts and impulses with respect to dangerous acts, since a child may not have the prudence, discretion, or thoughtfulness of an adult.

803

dards in apportioning negligence.[2] Frayer also requested instructions relating to Lovell's failure to yield, to a driver's duty of care when children are present and that Lovell's negligence was equal to or greater than Frayer's as a matter of law.

The trial court determined that the evidence supported an instruction to the jury that Lovell was negligent as a matter of law for unsafe backing. However, the court rejected Frayer's request for additional instructions related to Lovell's actions, such as the failure to yield. Further, the court denied Frayer's requested instructions regarding a lesser standard of care for children. Instead, the trial court instructed the jury that, although Frayer was a minor at the time of the accident, "[H]is conduct . . . in the operation of a motorized vehicle is to be weighed by the same standards of ordinary care as that of an adult."

The jury apportioned ninety percent negligence to Frayer and ten percent negligence to Lovell. The jury determined Frayer's damages to be $33,000 for pain and suffering, with no amount of recovery for his claimed loss of future earning capacity or for his parents' claimed loss of consortium. The trial court subsequently denied Frayer's postverdict motions for judgment notwithstanding the verdict and additur, changing special verdict answers, or a new trial in the

---

[2] WISCONSIN J I—CIVIL 1582 provides:

**COMPARATIVE NEGLIGENCE: ADULT AND CHILD**

If you are to answer question ———, you should consider that ——— was an adult and ——— was a child and consider and weigh the credible evidence bearing on the inquiries presented, in the light of the difference in the rules which you were previously instructed to apply in determining whether the conduct of the parties was negligent.

interest of justice, and entered judgment on the jury's verdict. Frayer appeals.

Frayer's primary appellate argument is that the trial court erred in failing to give various instructions that he requested. We note at the outset that a trial court has broad discretion when instructing a jury, including the determination of which instructions will be given, so long as they fully and fairly inform the jury of the principles of law applicable to the particular case. *D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis. 2d 306, 334, 475 N.W.2d 587, 597 (Ct. App. 1991). If the instructions given adequately cover the law, a trial court does not erroneously exercise its discretion when it refuses to give a requested instruction, even if the proposed instruction is correct. *Nelson v. Taff*, 175 Wis. 2d 178, 186, 499 N.W.2d 685, 688 (Ct. App. 1993). With these general principles in mind, we address Frayer's specific arguments.

## STANDARD OF CARE

Frayer first argues that the trial court erred in instructing the jury that his comparative negligence should be evaluated under an adult standard of care. We disagree.

Frayer correctly summarizes Wisconsin case law which holds that while a child over seven is capable of negligence, such a child under normal circumstances is not held to an adult standard of care, and the jury should be instructed to consider the child's age and

805

experience in apportioning negligence.[3] However, an exception to this rule exists where the child is involved in activity typically engaged in only by adults or in an activity for which a license is required, such as driving a car or flying an airplane. *Strait v. Crary*, 173 Wis. 2d 377, 382-83 & n.5, 496 N.W.2d 634, 636 (Ct. App. 1992).

The dispositive issue, therefore, is whether Frayer was engaged in an "adults-only" or "licensed" activity. *See id.* at 383, 496 N.W.2d at 636. We hold that he was. The operation of a motorized vehicle on a public roadway is both primarily an adult activity and an activity requiring a license. *See* § 343.05, STATS. While it is true that a minor may lawfully operate a motor vehicle under certain circumstances, he or she must obtain a license to do so, *see* § 343.08, STATS., and therefore may properly be held to an adult standard of care.[4] By operating his minibike on a residential roadway, Frayer was acting like an adult and engaging in an activity for which a license is required. Accordingly, we conclude that the trial court did not misuse its discretion in instructing the jury to hold Frayer to an adult standard of care.

---

[3] *See, e.g., Rossow v. Lathrop*, 20 Wis. 2d 658, 663, 123 N.W.2d 523, 526 (1963); *Brice v. Milwaukee Auto. Ins. Co.*, 272 Wis. 520, 525, 76 N.W.2d 337, 340 (1956).

[4] The rationale behind the adult standard of care for licensed activities is summarized in RESTATEMENT (SECOND) OF TORTS § 283A cmt. c (1965), in part as follows:

> In this connection licensing statutes, and the examinations given to drivers, may be important in determining the qualifications required; but even if the child succeeds in obtaining a license he may thereafter be required to meet the standard established primarily for adults.

Frayer argues that the operation of a minibike is not an activity performed primarily by adults. Further, Frayer points out that the operation of a minibike in and of itself does not require a license and that, in fact, the minibike could not be licensed under Wisconsin law. We agree with Lovell that such arguments beg the question. The conduct at issue is not simply operation of a minibike, but rather the operation of a motorized vehicle on a public roadway, which does require a license. *See* § 343.05, STATS. When a child is engaged in such conduct, the public interest and the public safety require that any consequences due to the child's own incapacity should fall on him or her. *Strait*, 173 Wis. 2d at 383, 496 N.W.2d at 636.

## ADDITIONAL INSTRUCTIONS

Frayer also argues that the trial court erred by failing to give the following instructions: (1) WIS J I—CIVIL 1205, Right of Way: Moving From Parked Position; (2) WIS J I—CIVIL 1335, Emerging From a Private Driveway or Other Nonhighway Access; (3) WIS J I—CIVIL 1045, Driver's Duty When Children Are Present; and (4) that Lovell was negligent as a matter of law with respect to his failure to yield the right of way.

We recall here that a court does not erroneously exercise its discretion when it refuses to give a requested instruction if the instructions given adequately cover the law, even if the proposed instruction is correct. *Nelson*, 175 Wis. 2d at 186, 499 N.W.2d at 688. Error cannot be predicated on a refusal to give a requested instruction if the substance of the instruction is embodied in another instruction. *Peot v. Ferraro*, 83 Wis. 2d 727, 732, 266 N.W.2d 586, 589 (1978).

807

Frayer's requested instructions regarding Lovell's failure to yield the right of way and emerging from a driveway, while arguably correct, are embodied in the trial court's instruction to the jury that Lovell was negligent as a matter of law for unsafe backing. The court instructed the jury that based on WIS J I—CIVIL 1060, Lookout: Backing, Lovell "was negligent because of a violation of a safety statute [that] provides that the operator of a vehicle shall not back the vehicle unless such movement can be made with safety." *See also* § 346.87, STATS. The "reasonable safety" standard of care necessarily embodies several elements of conduct, including yielding the right of way to traffic. Therefore, the trial court did not misuse its discretion in not giving Frayer's requested instructions.

Frayer also argues that the additional specific instructions were necessary to enable the jury to compare negligence. However, there is no magic formula for determining comparative negligence. "The comparison of negligence is determined not by the kind or character or the number of respects of causal negligence but upon the degree of the contribution to the total of such negligence to the occurrence of the accident attributable to the persons involved."[5] *Jensen v.*

[5] Frayer argues that in situations involving backing from a private drive, "questions as to both failure to exercise a proper lookout and failure to yield the right of way are to be submitted to the jury" in comparing the negligence of the parties. *See Plog v. Zolper,* 1 Wis. 2d 517, 528, 85 N.W.2d 492, 498 (1957). First, we note that the trial court did instruct the jury as to proper lookout. Second, this case is distinguishable from *Plog* because the trial court in this case directed a finding of negligence as a

*Rural Mut. Ins. Co.*, 41 Wis. 2d 36, 43, 163 N.W.2d 158, 161 (1968) (quoted source omitted).

Frayer next argues that the trial court erred in failing to instruct the jury regarding a driver's duty when children are present based on the high level of activity in the subdivision. *See* WIS J I—CIVIL 1045. We disagree. Although Frayer included that instruction in his proposed list of jury instructions submitted to the court, our review of the jury instruction conference reveals that the instruction was never discussed, nor did counsel object to its exclusion at that time. Failure to object with particularity on the record to the proposed jury instructions constitutes waiver of any error.[6] Section 805.13(3), STATS.

---

matter of law. We agree with the trial court's recognition of this critical difference when it commented:

> [I]f the Court had not answered the verdict yes, as a matter of law, that the defendant, Mr. Lovell, was negligent, I would agree that they should have got other instructions concerning right-of-way, etc., and what the rules of law are. But I believe once the Court answers it, it's not a question of how many ways you're negligent.

[6] Even were we to address the issue, we note that WIS J I—CIVIL 1045 is appropriate only in cases where the driver had actual notice of the presence of children or where there were special facts, such as a school zone, park or playground, which should alert the driver to the possibility of the presence of children. *Lisowski v. Milwaukee Auto. Mut. Ins. Co.*, 17 Wis. 2d 499, 502-03, 117 N.W.2d 666, 668 (1962); WIS J I—CIVIL 1045 cmt. Although it is undisputed that the subdivision was typically busy with children, there was no evidence presented that Lovell had actual notice of Frayer or any other children playing in the area. Further, we cannot conclude that a street in a residential subdivision in and of itself rises to the level of a special fact as identified in *Lisowski*, such that a driver is chargeable as a

Frayer next argues that the trial court erred in not instructing the jury that Lovell's negligence was at least equal to or greater than his, and that the jury's verdict finding him ninety percent negligent is unjustifiably disproportionate under the facts of the case. We disagree.

The comparison and apportionment of causal negligence are peculiarly within the province of the jury. *White v. Leeder*, 149 Wis. 2d 948, 959, 440 N.W.2d 557, 561 (1989). We will uphold the jury's finding if there is any credible evidence to support it, *Brain v. Mann*, 129 Wis. 2d 447, 452, 385 N.W.2d 227, 230 (Ct. App. 1986), except where it is manifest as a matter of law that the allocation is unreasonably disproportionate, *Leckwee v. Gibson*, 90 Wis. 2d 275, 289, 280 N.W.2d 186, 192 (1979). Matters of weight and credibility are left to the jury, and where more than one reasonable inference can be drawn from the evidence, we must accept the inference drawn by the jury. *Brain*, 129 Wis. 2d at 452, 385 N.W.2d at 230.

Frayer argues that the verdict was disproportionate because it failed to reflect Lovell's negligence in failing to yield the right of way and unsafe backing into a roadway. He contends that because "[t]he negligence of one who enters a highway in the path of a vehicle is particularly great," the verdict was disproportionate and cannot be justified. We disagree.

This case involved comparing Frayer's negligence in failing to maintain a proper lookout with Lovell's negligence in unsafe backing. Frayer testified that he

matter of law with notice that children are likely to come into his or her path.

was on the roadway but did not see Lovell backing up. He further stated that he neither slowed down nor took evasive action to avoid the rear of Lovell's vehicle, which was only extended into the roadway approximately one and one-half feet. Lovell testified that he stopped and looked both ways prior to backing, but failed to see Frayer. Expert testimony was presented which indicated that Frayer had more time to see Lovell than Lovell had to see Frayer.

Therefore, we cannot say that the evidence of Lovell's negligence was so clear and the quantum so great that the trial court should have instructed the jury that Lovell's negligence was greater as a matter of law. *See, e.g., Johnson v. Grzadzielewski*, 159 Wis. 2d 601, 608, 465 N.W.2d 503, 506 (Ct. App. 1990). The trial court properly exercised its discretion in allowing the jury to apportion negligence. Further, because there is credible evidence from which the jury could have determined that Frayer's failure to maintain a proper lookout was a significant cause of the accident and because we must view the evidence in the light most favorable to the verdict, we decline to second-guess the jury's apportionment of negligence. *See Brain*, 129 Wis. 2d at 454-55, 385 N.W.2d at 231.

## PERVERSE VERDICT/ADEQUACY OF JURY AWARD

Frayer next argues that the verdict was so perverse that it cannot be justified. A verdict is perverse when a jury clearly refuses to follow the instruction of the trial court on a point of law, or where the verdict reflects highly emotional, inflammatory or immaterial considerations, or an obvious prejudgment with no

811

attempt to be fair. *Becker v. State Farm Mut. Auto. Ins. Co.*, 141 Wis. 2d 804, 820, 416 N.W.2d 906, 913 (Ct. App. 1987). Frayer contends that the verdict "demonstrates the jury's perversity, passion, and prejudice towards [Frayer] riding his minibike, without a license, in disobedience to his parents, on the roadway, which was not a proximate cause of this accident." We disagree.

Here, the trial court specifically instructed the jury that the fact that Frayer was unlicensed was not a cause of the accident and therefore not a factor which it was to consider in determining whether he was negligent. First, we presume that the jury follows the instructions given by the trial court. *State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432, 436 (Ct. App. 1989). Further, Frayer fails to identify anything specific which suggests that the jury was acting pursuant to "highly emotional, inflammatory or immaterial considerations" or out of a sense of prejudgment. *Becker*, 141 Wis. 2d at 820, 416 N.W.2d at 913.[7]

Frayer also contends that the damages awarded by the jury are so inadequate as to be perverse. As evi-

---

[7] Frayer claims that during voir dire several jurors indicated that they had difficulty dealing with the situation where a driver without a license is involved in a motor vehicle accident, and one juror was excused because he admitted to the judge that he may have problems following the instructions in this regard. However, other than the juror who was excused, Frayer fails to provide any citation to the record which indicates that any sitting juror had difficulty following the court's instruction to disregard the fact that Frayer did not have a license. We decline to sift through the record to locate support for Frayer's contention. *Keplin v. Hardware Mut. Casualty Co.*, 24 Wis. 2d 319, 324, 129 N.W.2d 321, 323 (1964).

dence of the inadequacy of the damages, Frayer points to the fact that the jury awarded damages in an amount below the figure that Lovell's counsel was advocating in defense. Lovell's counsel argued during summation that the jury's pain and suffering award should be between $80,000 and $90,000 rather than $150,000 as requested by Frayer, and that the parents suffered damages between $5000 and $8000 for loss of consortium rather than Frayer's requested $12,000. However, the jury awarded $33,000 for pain and suffering and zero for Frayer's parents' loss of consortium.

In reviewing jury awards, we may not substitute our judgment for that of the jury and are limited to determining whether the awards are within reasonable limits. *Brain*, 129 Wis. 2d at 455, 385 N.W.2d at 231. If there is any credible evidence to support the jury's finding as to the amount of damages, we will not disturb the finding unless the award is so unreasonably low that it shocks the judicial conscience. *Id.* Where the trial court approves the amount of damages, we will set aside the verdict only if a misuse of discretion is evident. *Id.*

Here, the trial court approved the jury's damages awards, finding that there was credible evidence to support them. Therefore, we must examine the trial court's reasoning to determine if it misused its discretion. The court reasoned in part as follows:

> In terms of society, companionship, there was almost deminimis [sic] evidence presented to the jury concerning that loss. . . . [T]here wasn't a great deal [of evidence] showing how the interrelationship had been adversely affected to any great extent where I could not find that the jury for some per-

verse reason or what have you determined it should be anything but zero. . . .

The one that caused my eyes to open a little bit was the past and future pain, suffering, disability at $33,000. . . .

. . ..

. . . I'm looking at that figure . . . and thinking to myself I may have awarded more. The jurors could have considered the evidence in light of the non-restrictions for disability, looked solely at pain and suffering concepts, and felt $33,000 was a lot of money for that.

Based upon our review of the record, we cannot conclude that the jury's damages awards were perverse or inadequate, or that the trial court misused its discretion in approving the damages. First, arguments by counsel during summation do not constitute evidence, and it is up to the jury to draw its own conclusions from the evidence in answering the special verdict questions. *See* WIS J I—CIVIL 110. Second, as the court noted, there was evidence from Frayer's doctor that his condition had improved to the point where he had no limitations on his functional abilities. In addition, Lovell's vocational expert testified that Frayer suffered no loss of potential future income. Third, because Frayer presented only minimal evidence regarding his parents' loss of consortium, we do not consider the jury's award of zero to be unreasonable.

Last, although the subjective pain and suffering award may be somewhat low in light of Frayer's three surgeries and considerable medical expenses, the $33,000 award is not so unreasonably low as to shock the judicial conscience. *Brain*, 129 Wis. 2d at 455, 385 N.W.2d at 231. Neither the trial court nor this court

may set aside a jury award merely because the award was small or because we would have, as an original matter, awarded a greater amount. *See Davis v. Allstate Ins. Co.*, 55 Wis. 2d 56, 58-59, 197 N.W.2d 734, 736 (1972).

## INTEREST OF JUSTICE/DISCRETIONARY REVERSAL

Frayer also requests a new trial in the interest of justice pursuant to § 805.15(1), STATS., or, in the alternative, discretionary reversal pursuant to § 752.35, STATS. As we have stated, we find no error in the court's instructions to the jury, and we see no grounds to grant a new trial in the interest of justice or any other reason why this court should exercise its discretionary power of reversal.

*By the Court.*—Judgment affirmed.