COURT OF APPEALS
DECISION
DATED AND FILED

January 22, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2018AP1531**

STATE OF WISCONSIN

Cir. Ct. No.  2015CV8730

IN COURT OF APPEALS
DISTRICT I

HARRY VERKLER,

PLAINTIFF-RESPONDENT,

YRC, INC.,

INVOLUNTARY-PLAINTIFF,

V.

ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY AND VICTORIA SOUTHERN,

DEFENDANTS-APPELLANTS.

APPEAL from a judgment of the circuit court for Milwaukee County:  MARY E. TRIGGIANO, Judge.  *Affirmed*.

Before Brash, P.J., Kessler and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.    Victoria Southern and Allstate Insurance Company (collectively Allstate) appeal the judgment in this civil negligence action arising from an accident between a car driven by Southern and a double semi-trailer truck that Harry Verkler was operating.

¶2      Allstate argues that the trial court erred in denying their request for a jury instruction on the emergency doctrine which prejudiced Allstate and that the trial court erred in concluding that credible evidence supports the jury's verdict finding that Southern was negligent.[1]

¶3      We are not persuaded by Allstate's arguments.    Therefore, we affirm.

## BACKGROUND

¶4      Shortly after 1:00 a.m. on September 28, 2013, City of Oak Creek police officer Ashley Schnering was dispatched to the scene of an accident near YRC, Inc.'s Oak Creek truck terminal.  As the officer approached the scene from the south, she saw a semi-trailer truck blocking Howell Avenue, a two lane road. She also saw a small blue car in YRC's driveway.

---

[1] Allstate also raises a new argument in their reply brief that Southern was not negligent because she did not engage in a "volitional act" as a result of her blacking out prior to the collision.  "Generally, we do not consider legal issues which are raised for the first time on appeal." *Schonscheck v. Paccar, Inc.*, 2003 WI App 79, ¶10, 261 Wis. 2d 769, 661 N.W.2d 476. Moreover, "[i]t is a well-established rule that we do not consider arguments raised for the first time in a reply brief." *See Bilda v. County of Milwaukee*, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661.

¶5      Schnering initially talked to Southern, then seventeen years old, who had been driving the blue car.  Southern said that she had been lost, but she was not lost enough to pull over and use her global positioning system (GPS).  Southern said she did not remember anything prior to the accident and that she had blacked out.  Later that morning, Southern told Schnering that she had been driving north on Howell Avenue.

¶6      Next, Schnering spoke to Verkler, a commercial truck driver employed by YRC.  Verkler stated that Southern caused the accident when she made a U-turn and struck the driver's side of the semi-trailer truck.  At the time of the accident, Verkler had the semi-trailer truck's headlights on, the dome light illuminated, and reflective strips that were affixed to the truck and the entire length of the bottom of the trailers.

¶7      Verkler stated that when the car hit the truck, the truck was on YRC's driveway.  He was sitting in the driver's seat, looking at paperwork, and preparing to turn right from the driveway onto Howell Avenue.

¶8      Schnering then investigated the accident scene and saw that Southern's car and all the related debris from the accident, including oil and broken glass, were on YRC's private driveway that provides access to Howell Avenue.  Schnering saw a broom leaning against Southern's car, but she did not know who placed the broom there.  She said that the broom could have been from the fire department, which had arrived before she did, or from another police officer.  There was no debris on Howell Avenue.

¶9      The case was tried before a jury on April 30, and May 1, 2018.  At trial, Southern testified that she believed that she had not blacked out prior to the accident.  She stated, "In the moment of the police officer and the ambulance and

everybody asking me, I didn't have answers for them. And so I think everything happened fast. And I didn't know what was happening, and so I told them that I blacked out." She also testified that she knew she was heading north on Howell Avenue at the time of the accident and that was the last thing she recalled.

¶10 Verkler testified that he glanced up from the paperwork he was reviewing, saw the glare of some headlights coming from the north, and did not think anything of it. He looked back down and the next thing he remembered was feeling an explosion.

¶11 During the trial, Verkler attempted to introduce Schnering's testimony about her conclusions that she reached based on her observations at the accident scene that all the debris was on YRC's driveway. Allstate objected. After an off the record side bar conference, the trial court held that Schnering could only testify regarding her observations of the physical evidence, not the conclusions she drew from those observations.

¶12 Before closing arguments, the trial court conducted an instruction conference, and Allstate asked the trial court to give the jury the Wisconsin jury instruction on the emergency doctrine—WIS JI—CIVIL 1105A MANAGEMENT AND CONTROL—EMERGENCY (emergency instruction). The trial court declined to give the instruction. Part of the instruction conference was in chambers and is not part of the record. However, the trial court allowed the parties to place the issues relating to the emergency instruction on the record. The trial court explained on the record that it was not going to give the emergency instruction because it was not applicable, since Southern could not recall anything about the circumstances immediately before the accident.

¶13 The jury returned a verdict in favor of Verkler, finding that Southern was negligent and apportioning 80% of the negligence to her and 20% to Verkler. The jury awarded damages to Verkler.

¶14 Verkler filed a motion for judgment on the verdict. Allstate filed a motion to change the verdict or grant a new trial. They also filed a response opposing Verkler's motion for judgment on the verdict. Verkler filed a brief opposing Allstate's motion and requesting that the trial court enter judgment on the verdict. Allstate then filed a reply brief.

¶15 The trial court heard oral arguments on the motions and issued a written decision and order denying Allstate's motion and granting Verkler's motion for judgment on the verdict.[2]

¶16 This appeal followed. We will refer to additional necessary facts in our discussion.

## DISCUSSION

¶17 Allstate argues that the trial court erred in denying their request for a jury instruction on the emergency doctrine and that the lack of that instruction prejudiced Allstate. Allstate further argues that the trial court erred in concluding that credible evidence supported the jury's verdict finding that Southern was negligent.

---

[2] Pursuant to a November 2, 2018 order from this court raising the issue of whether the July 27, 2018 order was a final order, the trial court issued an order for judgment on November 15, 2018, that was a final order for purposes of appeal. We then issued an order confirming that, as a result of the November 15, 2018 order, we had jurisdiction over this appeal.

## I.    The trial court properly ruled that the emergency doctrine does not apply to the facts of this case

¶18    Allstate contends that the trial court erred when it denied their request for the emergency instruction.  We conclude that the trial court properly ruled that the emergency instruction is not applicable to the facts of this case.

### A.    Applicable law

¶19    "A circuit court has broad discretion in deciding whether to give a requested jury instruction." *State v. Coleman*, 206 Wis. 2d 199, 212, 556 N.W.2d 701 (1996).  "This does not mean, however, that a jury instruction is insulated from review.  Facts of record must support the instruction and the instruction must correctly state the law." *Kochanski v. Speedway SuperAmerica, LLC*, 2014 WI 72, ¶10, 356 Wis. 2d 1, 850 N.W.2d 160.  We independently consider whether the facts of record support the requested jury instruction and whether the instruction correctly states the law. *See id.*

¶20    "The emergency doctrine excuses an individual from negligence." *Totsky v. Riteway Bus Serv., Inc.*, 2000 WI 29, ¶22, 233 Wis. 2d 371, 607 N.W.2d 637.

> The rationale underlying the emergency doctrine "is that a person faced with an emergency which his conduct did not create or help to create is not guilty of negligence in the methods he chose, or failed to choose, to avoid the threatened disaster if he is compelled to act instantly without time for reflection."

*Id.*, ¶23 (citations omitted).

¶21    The trial court explained to the parties that the emergency jury instruction, WIS JI—CIVIL 1105A, provided in part:

> When considering negligence as to management and control bear in mind that a driver may suddenly be confronted by an emergency, not brought about or contributed to by her or his own negligence. If that happens and the driver is compelled to act instantly to avoid collision, the driver is not negligent if he or she makes a choice of action or inaction that an ordinarily prudent person might make if placed in the same position. This is so even if it later appears that her or his choice was not the best or safest course.

### B.    The trial court properly denied Allstate's request for the emergency instruction

¶22    As stated earlier, before closing arguments, the trial court ruled that it would not give the emergency instruction because the instruction involves a driver who makes a choice of action or inaction and, because Southern was unable to recall anything about the situation immediately before the accident, there was no evidence that Southern made any choice.

¶23    Schnering testified that, at the scene of the accident, Southern told her that she had blacked out. However, during the trial, Southern testified that she did not believe that she actually blacked out, it was just that everything was happening so quickly with the police and the ambulance and as a result, it was easier for seventeen-year-old Southern to say that she had blacked out. Southern also testified that she could not recall anything about the accident.

¶24    In its postverdict decision, the trial court explained, "In light of [Southern's] belief that she didn't black out, despite her previous 'guesses' that she actually did pass out, the [c]ourt is unwilling to conclude that the emergency instruction was required. While jury instructions must conform to the evidence, they need not conform to speculation, guesswork and conjecture." As a result, the trial court concluded that the emergency instruction was not applicable to the facts of the case. In other words, the trial court found that the evidence presented at

trial did not include any evidence of an emergency that caused Southern to instantly act to avoid the collision and that, in fact, there was no evidence whether she acted or did not act at all.

¶25    We agree with the trial court's analysis and, thus, we conclude that the trial court properly ruled that the emergency instruction was not applicable to the facts in this case.

### C.    At trial Allstate agreed with the trial court's ruling

¶26    Further, we conclude that, at trial, Allstate agreed with the trial court's ruling.  Having agreed with the trial court's ruling, Allstate cannot now, on appeal, argue that the instruction should have been given.  *See **Cascade Mountain, Inc. v. Capitol Indem. Corp.***, 212 Wis. 2d 265, 269, 569 N.W.2d 45 (Ct. App. 1997) (stating that "[a] party cannot complain about an act to which he or she deliberately consents").

¶27     In its postverdict decision, the trial court explained that, at the time of the jury instruction conference and its ruling on the emergency instruction, it gave the parties an opportunity to preserve their arguments regarding the emergency instruction by placing them on the record.  It stated that, at trial, "[w]ith respect to the emergency instruction, counsel for [Allstate] stated as follows:"

> Well, I think the testimony is not clear what happened or didn't happen.  I think there's gaps in memory in both parties….  I think that there's no evidence at all that she made that supposed U-turn.  It appears she was going northbound on Howell, and *something happened*.  I guess in terms of the temporal situation there really isn't a need for new testimony on that.  And I guess I would agree to that.

(Emphasis added.)

8

¶28    Moreover, after Allstate's statement, the trial court responded, "[T]he question we had in chambers was what was the emergency.  And with the lack of recall memory from both parties, I couldn't find that there was an emergency created that someone tried to avoid."  Allstate did not make any further argument that the trial court should have given the emergency instruction.  We conclude that Allstate's statement regarding the issue of the emergency instruction was vague and conciliatory.  It amounted to a concession that the trial court was correct in its holding that the facts of the case did not fit within the confines of the emergency instruction.

### D.    Any error in the jury instructions was forfeited because Allstate failed to object to the proposed jury instructions on the record

¶29    The record shows that, although Allstate requested the emergency instruction in their proposed list of jury instructions filed with the trial court, Allstate did not object to the trial court's ruling denying the request.  Where a party includes an instruction in a list of proposed jury instructions submitted to the trial court, but fails to object with particularity on the record to the rejection of the proposed jury instructions, the party forfeits any error.[3]  *See **Frayer v. Lovell***, 190 Wis. 2d 794, 809, 529 N.W.2d 236 (Ct. App. 1995).

---

[3] We have substituted the term "forfeits," for the term "waives" as used in ***Frayer v. Lovell***, 190 Wis. 2d 794, 809, 529 N.W.2d 236 (Ct. App. 1995).  We do so based on ***State v. Ndina***, wherein our supreme court explained the distinct legal concepts embodied by the terms "forfeiture" and "waiver", even though the two terms are often used interchangeably.  *See **id.***, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612.  Forfeiture is "the failure to make timely assertion of a right," and "waiver is the intentional relinquishment of a known right."  ***Id.*** (citation omitted).  In the context of the failure to object to a jury instruction, the applicable term is forfeit.  Therefore, even though WIS. STAT. § 805.13(3) (2017-18), and some cases interpreting that statute refer to this concept as waiver, we use the term forfeit in this and similar contexts throughout the opinion.

(continued)

9

¶30    Here, Allstate included the emergency instruction in a list of proposed jury instructions submitted to the trial court, but failed to object when the trial court denied the request to give that instruction.  Therefore, Allstate forfeited any error in the jury instructions that the trial court gave to the jury.

### E.    Allstate forfeited any argument regarding prejudice

¶31    Allstate also argues that this court should grant a new trial in light of the trial court's error in failing to instruct the jury on the emergency doctrine because the error was prejudicial.  This argument is based on Verkler's argument in closings that Southern's blacking out constituted negligence.  Allstate argues that Verkler's counsel's misrepresentation of the law prejudiced them.[4]  We are not persuaded by Allstate's argument.

¶32    What Allstate is really arguing is that they were prejudiced by Verkler's closing argument.  They argue that, at trial and in postverdict motions, Verkler argued that "suddenly and unexpectedly blacking out while driving constitutes evidence of negligence."  Allstate then asserted that Verkler's closing argument misstated the law.

¶33    We conclude that, even if Verkler misstated the law during closing argument, because Allstate neither moved for a new trial nor objected to the

---

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[4] Allstate also maintains that, by relying on Southern's blacking out in his closing argument, Verkler judicially admitted the blackout and is now judicially estopped from denying that Southern blacked out.  Because we conclude that Allstate forfeited any argument regarding Verkler's closing argument, we need not address Allstate's judicial admission and judicial estoppel arguments.

closing argument before the jury reached its verdict, Allstate forfeited the argument. *See,* e.g., **Peot v. Ferraro**, 83 Wis. 2d 727, 741-42, 266 N.W.2d 586 (1978) (stating that review on appeal of "an allegedly improper closing argument" cannot be had "as a matter of right" if "the objecting party did not move for a mistrial on the basis of the claimed impropriety before the jury returned its verdict").

¶34    Thus, with respect to Allstate's argument that the trial court erred in declining to give the emergency instruction, we conclude that: (1) the trial court properly decided that the evidence did not support giving the emergency instruction; (2) at trial Allstate agreed that the trial court's ruling was correct and, therefore, cannot now on appeal argue that the instruction should have been given; (3) Allstate failed to object on the record to the trial court's rejection of their proposed jury instruction and, therefore forfeited the issue; and (4) Allstate failed to object to Verkler's closing argument and did not move for a new trial and, therefore, they forfeited any prejudice argument.

## II.    Credible evidence supports the jury's verdict

¶35    Allstate argues that there is no "genuine" evidence of negligence in the record to support the jury's finding that Southern was negligent. Verkler argues that evidence supports the jury's finding that Southern was negligent, relying on the evidence that Southern failed to see what was in plain sight; that the accident occurred in YRC's driveway; that Southern was lost, watching addresses, and not using her GPS; that she made a U-turn in YRC's driveway; and that she blacked out.

### A.      Applicable law

¶36    "Our review of a jury's verdict is narrow."    *See Morden v. Continental AG*, 2000 WI 51, ¶38, 235 Wis. 2d 325, 611 N.W.2d 659.  We "will sustain a jury verdict if there is any credible evidence to support it."  *See id.*  It is the jury's role to evaluate the credibility of witnesses and weigh the evidence.  *Id.*, ¶39.  As a result, when the evidence supports more than one reasonable inference, "we accept the particular inference reached by the jury."  *See id.*  We will overturn a verdict only in cases where "there is such a complete failure of proof that the verdict must be based on speculation."  *See id.*, ¶40. (citation omitted).  We will uphold the jury verdict regardless of whether the evidence is "contradicted and the contradictory evidence [is] stronger and more convincing."  *See id.*, ¶39 (citation omitted).

¶37    To establish a claim for negligence under Wisconsin law, a plaintiff must prove:  "(1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and injury; and (4) an actual loss or damage as a result of the injury."  *See Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 260, 580 N.W.2d 233 (1998) (citation omitted).

### B.      Southern's failure to see what was in plain view

¶38    Verkler argues that the jury's finding that Southern was negligent is supported by the evidence that Southern failed to see what was in plain view. Allstate argues that Verkler did not make this argument before the trial court and, therefore, forfeited it.

¶39    The record refutes Allstate's forfeiture argument.  The trial court specifically gave a jury instruction on plain view.  Moreover, at trial, the evidence

12

indicated that Verkler's vehicle was a semi-trailer truck sitting in the driveway with its headlights and dome light on, and with reflective trim. Furthermore, Southern admitted that nothing impaired her vision of the truck and, yet, she crashed into it. Such evidence supports a reasonable inference that Southern breached her duty of care.

### C.    Evidence of the accident location

¶40    The location of the accident also supports the inference that Southern breached her duty of care. Verkler's testimony established that the impact occurred on YRC's private driveway, not on Howell Avenue—the road that Southern was traveling on. Southern had to leave the road before she could crash into the truck. All the physical evidence was in the driveway.

¶41    Allstate argues that Schnering's testimony that all the evidence was in the driveway is not evidence of negligence because Schnering only testified about the physical location of the debris in the driveway, and because Schnering was not allowed to express an opinion regarding the location of impact because she was not an expert. Allstate argues that, if the lay experience of Schnering did not qualify her to express the opinion that the accident occurred in the driveway, then the lay persons on the jury had insufficient basis to draw that inference. In support of their argument, Allstate cites *Boutin v. Cardinal Theatre Co.*, 267 Wis. 199, 201, 64 N.W.2d 848 (1954), an action under the safe place statute arising from injuries that a theatre patron sustained due to a fall to the floor in the

darkened theatre after he attempted to sit on a theatre seat that was missing its lower seat cushion. ***Boutin*** does not support Allstate's argument.[5]

¶42    Allstate fails to develop any argument that based on the evidence in the record, it was beyond the common knowledge of a lay person—the jurors—to determine the point of impact of the collision. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (declining to address undeveloped arguments). We conclude that the fact that the point of impact occurred at the location of all the debris was within the knowledge of the jury, based on the common knowledge of lay persons regarding the relationship between a car crashing into a semi-trailer truck, the location of debris following that collision, and where that collision occurred.

¶43    Therefore, we conclude that the evidence that all the debris from the accident was located on YRC's driveway is supportive of the jury's finding that Southern breached her duty of care.

### D.    Evidence that Southern was lost, watching addresses, and not using her GPS

¶44    Allstate argues that no negligence can be inferred from the evidence that Southern was lost or looking for addresses. Allstate also argues that Verkler is raising this argument for the first time on appeal.

---

[5] The issue in ***Boutin*** was whether the evidence was sufficient to sustain a jury verdict finding that the theatre owner, in the exercise of ordinary care, reasonably should have known of the unsafe condition of the seat, although there was no evidence of how long the defect existed or that it existed for so long a period that the theatre manager's failure to remedy the condition was negligence. *See **id.*** at 204-05. Based on the evidence in ***Boutin***, our supreme court stated that "the determination of when the cushion was removed and by whom rests in sheer speculation. The jury may not be permitted to guess." *See **id.*** at 205.

¶45     In Verkler's response to Allstate's postverdict motion, Verkler referred to Southern's testimony of being "lost" at the time of the accident as evidence supporting the jury's negligence finding.    Thus, this argument was presented to the trial court.    Southern's testimony included the facts that she was looking at addresses and not using her GPS.    The evidence that Southern was lost in the dark, not using her available GPS, and was looking at the addresses of the properties supports the inference that Southern was negligent because her eyes were diverted from the road on which she should have been concentrating.    Based on that evidence, we conclude that the jury could find that Southern was negligent.

### E.     The U-turn evidence

¶46     Verkler relies on Southern making a U-turn as supporting the finding that she was negligent.    Allstate argues that Verkler abandoned the U-turn argument at trial and there was no evidence about a U-turn during the trial.

¶47     At trial, Verkler introduced into evidence the statement he made to Schnering at the accident scene that he saw Southern make a U-turn before her car collided with the truck.    Verkler was thoroughly cross-examined at trial on his prior statement to Schnering about the U-turn.    Verkler testified that he could not recall making that statement or whether or not Southern actually made a U-turn. In his closing argument, Verkler's counsel argued that there were two possibilities for the crash:    either Southern was making a U-turn, and came wide and hit the truck; or when Southern was driving north on Howell Avenue, she blacked out, veered off the road, and crashed into the truck.

¶48     We conclude that Verkler did not abandon the U-turn argument.    It was the role of the jury to decide what weight to give the evidence and the argument regarding the U-turn.    The jury could have properly considered the

evidence that Southern made too wide a U-turn and hit the truck as evidence of negligence.

### F.    Blackout evidence

¶49    Allstate also argues that the evidence that Southern blacked out does not constitute evidence of negligence. They argue that the blackout "is no[t] affirmative evidence to substantiate the existence of negligence; it's merely a lack of evidence[] or a *hole* in the evidentiary record" and that the "[a]bsence of evidence is not evidence."

¶50    Allstate does not develop this argument and it is not the role of this court to develop arguments for the parties. *See **Pettit***, 171 Wis. 2d at 646-47 (stating, "[w]e cannot serve as both advocate and judge" and, therefore, declining to address the issues).

### CONCLUSION

¶51    For the reasons stated above, we affirm the judgment.

*By the Court.*—Judgment affirmed.

This opinion will not be published. WIS. STAT. RULE 809.23(1)(b)(5).

16