STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas James DANIELS, Defendant-Appellant.†

Court of Appeals

No. 83–739–CR. Submitted on briefs November 16, 1983.—
Decided December 7, 1983.
(Also reported in 343 N.W.2d 411.)

† Petition to review denied.

10

For the defendant-appellant the cause was submitted on the briefs of *Donald A. Clark, Jr.,* of Wauwatosa.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *E. Gordon Young,* assistant attorney general, of counsel, of Madison.

Before Wedemeyer, P.J., Decker and Moser, JJ.

MOSER, J. This is an appeal from a judgment convicting Thomas James Daniels (Daniels) of first-degree sexual assault in violation of sec. 940.225(1)(d), Stats., and from the order entered December 10, 1982, sentencing him to no more than five years' incarceration.

On February 9, 1982, at approximately 7 p.m. Daniels and Johnny Malone (Malone) arrived at the home of D.H., the mother of M.H., a ten-year-old boy. During the course of the evening Malone and D.H. were in D.H.'s bedroom. M.H. testified at trial that he and Daniels were in the kitchen of the residence looking at a family photo album and later playing a card game called "Tonk." He further testified that while the game ensued Daniels advised him that who ever lost the game had to "fuck," at which time M.H. said "I quit." Daniels then shoved M.H. into his bedroom, removed his trousers and underpants and proceeded to engage M.H. in anal intercourse. Daniels was unable to force full penetration on the first attempt and went to the bathroom to lubricate his penis, after which he successfully completed penetration. M.H. testified that before and during the sexual attack Daniels threatened him with a knife to keep him quiet. After the second anal entry was made, M.H. went to his mother's bedroom and advised her of what Daniels had done. D.H. testified that she and Malone went to the boy's room and

found Daniels asleep and naked from the waist down. She further testified that she brought a stick with her to strike Daniels. After a short argument, she threw Daniels' shoes out the window to stop him from leaving and called the police. A police patrolman testified that when he arrived there was much turmoil in the house and that, after gathering statements from D.H., M.H., Malone and Daniels, he called the Milwaukee Police Department Detective Bureau. Thomas Gorecki, a detective, subsequently arrived at the scene. In statements to police authorities Daniels denied he was ever in the boy's bedroom. At trial he denied the charges against him.

During the *voir dire* of the jury, juror number twenty was excused for cause and replaced by juror number twenty-one, Victor E. Venus (Venus), a Milwaukee police sergeant. The record reflects that Daniels' defense counsel introduced himself to the potential jurors as follows:

MR. KAUFMAN: Good morning. My name is Jeff Kaufman. The Defendant is Thomas Daniels. I work for the law firm of Gimbel, Gimbel and Reilly here in town. Some of the people in our firm that you may recognize are Frankyn [sic] Gimbel, Stanley Gimbel, Richard Reilly, *Thomas Brown,* Michael Guerin, Linda Vanden Heuvel, and James Fergal. Mr. Daniels is the only witness that I know of at this time that may be called. (Emphasis added).

The trial judge's *voir dire* questions to Venus and Venus' answers were as follows:

THE COURT: Motion granted. Mr. Koerner, you will retire to the first row, and we will call Juror No. 21 who is Victor Venus.

JUROR NO. 21: Your Honor, I know all the officers involved also. I'm a Detective with the Milwaukee Police Department.

THE COURT: Do you have any knowledge of this case?

JUROR NO. 21: No, I don't.

THE COURT: Do you believe that you could sit as a juror despite the fact that you know the officers in this case?

JUROR NO. 21: Yes, I do, Your Honor.

THE COURT: You believe you could reach a verdict solely upon the evidence and the instructions of this Court and without reference to any prior knowledge that you might have of any of the Police Officers?

JUROR NO. 21: Yes, I do, Your Honor.

THE COURT: You give any greater credence or lesser credence to the Police Officer's testimony than you would to someone who is not a Police Officer just because that witness would be a Police Officer?

JUROR NO. 21: No, I wouldn't, Your Honor.

THE COURT: All right. Would you take your place in seat Number 20, and would you remain standing and give us the information in a loud, clear voice.

JUROR NO. 21: I am married, and I have three children. I live in the south part of the city. I have lived in Milwaukee all my life, and I'm a Detective with the Milwaukee Police Department, and I have never sat on a panel of a jury before, and I am into outdoor sports.

After these questions and answers were completed, juror number nine, Dennis V. Lillrose, advised the court that he knew Franklyn Gimbel, an associate of Daniels' counsel, as one of his instructors for criminal law to which the following occurred on the record:

THE COURT: Is there anything about that fact that would influence your decision in the case that is going to be tried before you?

JUROR NO. 9: No, not at all. Most of the time we had a different instructor any how, [sic] but he was with the course, but he used people from his law firm.

THE COURT: And you believe you could reach a decision based solely upon the evidence in this case and the instructions of this Court without reference to the fact that you took this course from an associate of Defense Counsel?

JUROR NO. 9: Yes, sir.

THE COURT: Is there anyone else who answered the question as to whether they know any of these parties in the affirmative?

(No response).

The district attorney and Daniels' counsel also questioned the potential jurors, but those questions and the answers given were not recorded.

After the jury rendered its verdict and was executed by the trial court and after the district attorney moved for judgment on the verdict, Daniels' counsel made the following statement on the record:

[I] suppose I should make a record in case it means anything. I was just informed over the phone by a member of our office, *Tom Brown,* that when he was a member of the U.S. Attorney's Office he conducted an investigation of the Milwaukee Police Department, and Mr. Venus was one of his targets, and he and Mr. Venus, who is the man that was the foreman, had some problems.

I don't know how much bearing that has on this case. I do know that we ask [sic] all the jurors if they knew any members of my office. I don't know what bearing it might have, but I think I should just make a record to preserve the issue. (Emphasis added).

The trial court then ordered a presentence investigation and delayed sentencing until December 10, 1982. The presentence investigation report recommended that Daniels be placed on probation, receive treatment for alcohol abuse, and be confined for a period of one year in the Milwaukee County House of Correction under the work release program. On the date of sentencing the trial court read the report and listened to the arguments of the district attorney and Daniels' counsel. After explaining its reasoning, the trial court sentenced Daniels to prison for no more than five years but gave him credit for 122 days pretrial detention. It is from this judgment of conviction that Daniels appeals. Other facts necessary

to a discussion of the issues will be set forth in the body of this decision.

The issues on appeal are whether there was sufficient evidence to convict Daniels, whether his sixth amendment rights to a fair trial by an impartial jury were impaired and whether the trial court abused its discretion in imposing an excessive sentence or in denying a motion to modify the sentence.

## SUFFICIENCY OF EVIDENCE

Daniels' attack on the sufficiency of the evidence is two-pronged. First, he attacks the competency of M.H. who, at the time of the incident, was ten years old and, at the time of trial, was eleven. Daniels argues that, because the district attorney and the trial court did not, *sua sponte,* question the youth to determine competency, the child's testimony must be stricken and that, as a result, there was insufficient evidence to convict Daniels of first-degree sexual assault. In the second prong of his attack Daniels argues that the testimony of M.H. and his mother was so fraught with inconsistencies as to be rendered incredible such that a rational jury considering the evidence could not find Daniels guilty as a matter of law.

### A. Competency

There is no question but that Wisconsin formerly held that the competency of a witness, especially one who was a child of tender years, was to be determined by the trial court and that a failure to do so was an abuse of discretion.[1] The same is not true today. Effective Janu-

---

[1] *See* sec. 885.30, Stats. (1971); *State v. Davis,* 66 Wis. 2d 636, 645–47, 225 N.W.2d 505, 509–10 (1975). (The child's testimony in *Davis* related to a killing which occurred in 1972. The then existing statute in cases involving competency evidence was operative and controlling).

ary 1, 1974,[2] the supreme court adopted new rules of evidence which specifically replaced the old competency statute with sec. 906.01, Stats.[3] The judicial council committee notes to this particular evidentiary rule read in part as follows:

Adoption of s. 906.01 necessitates repeal of s. 885.30, and withdrawal of the case law thus removing from judicial determination the question of competency and admissibility; judicial determination of sufficiency and the jury assessment of the weight and credibility survive. The effect of the change is to shift the opponent's emphasis from a *voir dire* attack on competency to a cross-examination and introduction of refuting evidence as to weight and credibility.[4]

Because the competency standard statute was repealed necessitating a withdrawal of prior case law,[5] it is no longer necessary for a district attorney or a judge, *sua sponte,* to *voir dire* witnesses to establish competency because of tender age. Left for judicial determination is the sufficiency of the evidence. The issues of weight and credibility are matters for the fact finder based on the tests of direct, cross and rebuttal examination. We hold that under the present code of evidence no abuse of discretion occurs when a trial court does not *sua sponte* examine a witness of tender years, or any other witness, to ascertain competency, except of course as provided in the statute itself[6] or when the competency of the witness

---

[2] 59 Wis. 2d R1–2 (1973).

[3] *Id.* at R4 and R157.

[4] *Id.* at R158.

[5] This means that, as concerns witness competency, *Collier v. State,* 30 Wis. 2d 101, 140 N.W.2d 252 (1966) and all of its progeny, including *State v. Davis, supra* note 1, are no longer good law.

[6] Sec. 906.01, Stats. The deadman statute proscriptions of sec. 885.16–17 are exceptions to the general rule of competency.

becomes an issue in the course of direct or cross-examination.

We further note that at trial Daniels' counsel did not attempt to *voir dire* M.H. to test his competency, nor did he challenge such testimony by any form of objection. The failure to object to a witness' competency constitutes waiver of any competency challenge at a later time.[7]

## B. Weight and Credibility

■

The standard of review concerning sufficiency of the evidence in a criminal case is whether the evidence adduced, believed and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt.[8] The test is not whether the appellate court is convinced beyond a reasonable doubt, but whether the appellate court can conclude that the trier of fact could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true.[9] When there are inconsistencies within a witness' testimony or between witnesses' testimony, it is the trier of fact's duty to determine the weight and credibility of the testimony.[10] An appellate court will only substitute its judgment for that of the trier of fact when the fact finder relied upon evidence that was inherently or patently incredible—that kind of evidence which conflicts with nature or with fully established or conceded facts.[11]

---

[7] *Thomas v. State*, 92 Wis. 2d 372, 381, 284 N.W.2d 917, 922 (1979).

[8] *State v. Peotter*, 108 Wis. 2d 359, 367, 321 N.W.2d 265, 269 (1982) (citation omitted).

[9] *Id.* at 367–68, 321 N.W.2d at 269.

[10] *Thomas, supra* note 7.

[11] *Id.* at 382, 284 N.W.2d at 923.

■ There are two elements to the crime of sexual intercourse with a child under twelve years of age.[12] Those elements are: (1) that there is sexual intercourse (sexual intercourse includes anal intrusion such as that claimed here, however slight), and (2) that the child is under twelve years of age. The record is uncontroverted that M.H. was ten years old when the event took place; and the record, while controverted by Daniels' testimony, establishes that there was anal intrusion of M.H. by Daniels.

■ To be sure, there were inconsistencies within M.H.'s testimony and between M.H.'s and his mother's testimony. There were also inconsistencies within Daniels' testimony. Assessment of the weight and credibility of this inconsistent testimony was for the fact finder. It is not our appellate function to upset the verdict based on testimonial inconsistencies. The elements of the offense were testified to, on the record, and the evidence was not patently incredible. Therefore the verdict must stand.

## FAIR AND IMPARTIAL JURY

Every defendant in a criminal action is entitled to a fair and impartial jury under both the federal and state

---

[12] Sec. 940.225(1)(d), Stats. It must be noted that both the complaint and the information in this case charged Daniels with a violation of sec. 940.225(1)(e). There is no such statutory subsection. We do not regard this as a problem because both the complaint and the information establish beyond doubt that Daniels was being charged with a violation of sec. 940.225(1)(d). Further, the trial court in its instructions followed Wis J I—Criminal 1206. Therefore, Daniels was charged with and convicted of a violation of sec. 940.225(1)(d).

constitutions.[13] Daniels argues that he did not get a fair and impartial jury because Venus did not disclose that he knew any of the attorneys or any attorney associated with Daniels' trial counsel, when, in fact, he knew Thomas Brown, an associate in the same law firm as Daniels' counsel. He also argues that Venus had a duty to disclose his former adverse relationship with Thomas Brown and that, had Venus disclosed this relationship, Daniels' trial counsel would have had the opportunity to strike Venue for cause[14] or peremptorily.[15]

This argument is purely hypothetical. There is nothing in the record on this appeal to show that Venus personally knew Thomas Brown as an associate of Daniels' defense counsel. There is nothing in the record to establish that Venus knew Thomas Brown as a former assistant United States attorney who investigated the Milwaukee Police Department. Finally, there is nothing in the record to show that Venus had any knowledge that he, himself, was a target of such a federal investigation. This house of hypothetical cards built by Daniels' appellate counsel must fall because nowhere in the record is there support for the claim that this jury, because of Venus, was not fair and impartial.[16] A challenge of prejudicial bias or unfairness of a juror or jurors must be proved, not implied.[17]

[13] U.S. Const. amend. VI as applied to the states through the due process clause of amend. XIV; Wis. Const. art. I, § 7. *Hammill v. State*, 89 Wis. 2d 404, 407, 278 N.W.2d 821, 822 (1979).

[14] Secs. 805.08(1), 972.01 and 972.04(1), Stats.

[15] Secs. 972.03–.04, Stats.

[16] *See Paper Mach. Corp. v. Nelson Foundry Co.*, 108 Wis. 2d 614, 628–29, 323 N.W.2d 160, 167 (Ct. App. 1982).

[17] *State v. Boutch*, 60 Wis. 2d 397, 403–04, 210 N.W.2d 751, 754–55 (1973).

## SENTENCE

We reject Daniels' claim that the trial court erred in denying a motion to modify the sentence. We note that in the appendix to his brief he has attached a motion to modify, but the motion was filed in the trial court on April 27, 1983. The notice of appeal in this case was filed April 20, 1983. A motion to correct a sentence should be directed to the trial court before the sentence is challenged on appeal.[18] As neither the motion to modify nor the hearing and claimed denial of that motion is part of the record on this appeal, we reject Daniels' argument that the trial court erred in denying the motion to modify. We are bound by the record before us and cannot entertain issues and arguments outside of the trial record.[19]

Daniels further argues that the sentence of December 10, 1982, was too harsh and that the trial court erred in not considering all relevant factors in sentencing Daniels to no more than five years in prison. The sentence imposed by the trial court is therefore claimed to have been an abuse of discretion.

Appellate review of the question of whether a trial court abused its discretion in sentencing starts with consideration of the strong policy against interference with the sentence passed.[20] There is a presumption that the trial court acted reasonably, and the complainant has the

---

[18] *State v. Lynch,* 105 Wis. 2d 164, 166–67, 312 N.W.2d 871, 873 (Ct. App. 1981).

[19] *State v. Aderhold,* 91 Wis. 2d 306, 314, 284 N.W.2d 108, 112 (Ct. App. 1979).

[20] *State v. Way,* 113 Wis. 2d 90, 334 N.W.2d 918, 922 (Ct. App. 1983).

burden to show unreasonableness from the record.[21] The trial court exhibits the essential discretion if it considers the nature of the particular crime (the degree of culpability) and the personality of the defendant and, in the process, weighs the interests of both society and the individual.[22]

Other factors a trial court may consider include past criminal record; a history of undesirable behavior patterns; the defendant's personality, character, and social traits; the results of a presentence investigation; the defendant's demeanor at trial; his age, educational background and employment record; his remorse, repentance and cooperativeness; his need for close rehabilitative control and, finally, presentence detention.[23]

In sentencing Daniels, this trial court considered the nature of the offense of sexual intercourse with a ten-year-old, the degree of Daniels' culpability and his personality. The trial court also considered Daniels' prior police and court contacts, noting they all stemmed from ordinance violations but further noting they were all alcohol related. The court considered Daniels' undesirable behavior patterns and social traits, again related to his alcohol abuse. The court considered and within its discretion rejected[24] the recommendation of the presentence investigation report. It further considered Daniels' need

[21] *Ocanas v. State,* 70 Wis. 2d 179, 183–84, 233 N.W.2d 457, 460 (1975).

[22] *McCleary v. State,* 49 Wis. 2d 263, 271, 182 N.W.2d 512, 517 (1971).

[23] *State v. Tew,* 54 Wis. 2d 361, 367–68, 195 N.W.2d 615, 618–19 (1972).

[24] *Ocanas, supra* note 21, at 188, 233 N.W.2d at 462 (holding that no trial court, in sentencing, is bound by a presentence investigation report recommendation).

for close rehabilitative control. Finally, Daniels' presentence incarceration of 122 days was taken into account. In light of the foregoing factors, the trial court weighed the needs of society against Daniels' needs and concluded that he should be sentenced to no more than five years' incarceration. We conclude there was no abuse of discretion in sentencing Daniels.

It is worthy of note that for the offense he was convicted of, first-degree sexual assault, which is a class B felony,[25] Daniels could have been sentenced to twenty years' imprisonment.[26] A sentence well within the limits of the maximum sentence is not so disproportionate to the offense committed as to shock the public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.[27]

*By the Court.*—Judgment and order affirmed.

[25] Sec. 940.225(1)(d), Stats.
[26] Sec. 939.50(3)(b), Stats.
[27] *See Ocanas, supra* note 21, at 185, 233 N.W.2d at 461.