Kifah BARAKAT, Rasem Barakat and Kassee's Food
Market, Inc., Petitioners-Respondents,

v.

Wisconsin DEPARTMENT OF HEALTH & SOCIAL SERVICES,
Respondent-Appellant.

Court of Appeals

No. 93–2973. *Submitted on briefs July 7, 1994.—Decided
February 28, 1995.*

(Also reported in 530 N.W.2d 392.)

For the respondent-appellant the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Donald P. Johns*, assistant attorney general.

For the petitioners-respondents the cause was submitted on the briefs of *Charles L. Rustin*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SULLIVAN, J. The Wisconsin Department of Health and Social Services (DHSS) appeals from the trial court's judgment reversing an administrative hearing examiner's order that disqualified Kifah Barakat, his brother Rasem Barakat, and their corporate retail grocery store, Kassee's Food Market, Inc. (collectively "the Respondents") from participation in the Women, Infants and Children (WIC) program for three years. The parties raise several issues: (1) whether the agency's authority to conduct an administrative hearing and to disqualify the Respondents from WIC program participation was preempted by a federal criminal prosecution; (2) whether a disqualification imposed by the agency would be an excessive and unreasonable penalty in light of the federal criminal sanctions already imposed; and (3) whether the agency's procedures for determining whether to disqualify vendors and the length of such disqualifications are unreasonable and arbitrary. We conclude: (1) that the agency was not preempted by the federal criminal prosecution from disqualifying the Respondents' participation from the WIC program; (2) that disqualification is not an excessive and unreasonable penalty in light of the already-imposed criminal sanctions; and (3) that the agency acted within its discretion in imposing the three-year disqualification. Accordingly, we must reverse the judgment of the trial court that reversed and dismissed the agency action. Further, we remand the matter to the trial court with instructions to reinstate the order of the hearing examiner.

## I. BACKGROUND

In 1990, Kassee's Food Market was one of several vendors investigated by federal authorities and the

state WIC program for possible fraud. As a result of the federal investigation, the United States Attorney for the Eastern District of Wisconsin brought federal criminal charges against Kifah and Rasem Barakat and Kassee's Food Market, Inc. On August 7, 1991, the Respondents pled guilty to misdemeanor submission of false claims. *See* 42 U.S.C. § 1760(g). As part of the sentence, the federal district court fined the Respondents $15,000 and placed them on eighteen months probation, an original condition of which was that the Respondents would "not have any involvement in the WIC program for a period of three (3) years." On April 7, 1992, the district court modified the terms of the Respondents' probation by removing the three-year nonparticipation in the WIC program condition.

Meanwhile, on February 27, 1992, the state WIC office mailed the Respondents a letter notifying them of their three-year disqualification from the WIC program. The Respondents appealed and a DHSS examiner held an administrative hearing. After the hearing, the examiner made the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Kassee's Food Market is owned by Kassee's Food Market, Inc. Kifah Barakat is the manager of Kassee's Food Market, and President of Kassee's Food Market, Inc. Rasem Barakat is the Secretary of Kassee's Food Market, Inc. is located at 2131 West Wells Street in Milwaukee, Wisconsin.

2. Kassee's Food Market, Inc., has owned Kassee's Food Market since April 1, 1990. It applied for and was approved to be an authorized vendor under the Women, Infants, and Children (WIC) Program for the years 1989-90 and 1991-92.

773

3. Petitioners were charged with violating Title 18 of the United States Code, sections 287 and 2, in criminal indictments in the United States District Court, for the Eastern District of Wisconsin.

4. Each petitioner entered guilty pleas to the following:

> "[T]he defendant herein, did willfully obtain by fraud funds with a value of less than $99.00 that are the subject of a grant under Chapter 13 of the School Lunch Program Act, in that the defendant submitted claims to the Women, Infants & Children ("WIC") Program upon and against the U.S. Department of Agriculture for payment pursuant to WIC drafts which the defendant well knew overstated the actual dollar amount of the foods exchanged for those drafts."

The guilty pleas were entered pursuant to written plea agreements, signed by the petitioners on May 22, 1991. Included in all three plea agreements was the following provision:

> ". . . that this agreement does not limit the right of administrators of the WIC Program or other government programs to assess whatever sanctions as they deem advisable."

5. On September 27, and October 1, 1991, the District Court issued an order which modified the terms of petitioner's probations; the order removed the disqualification from participation in the WIC program. It is unclear why that probation term was included prior to the September 27 and October 1, Orders; there was no such provision in any of either the plea agreements or the Judgments.

6. By letters dated February 28, 1992, the WIC Program informed petitioners that they were being terminated as WIC vendors for a three-year period. WIC vendor status has been continued pending this decision.

. . . .

Petitioners further argue that the imposition of a three-year sanction is arbitrary and capricious. They correctly cite the standard for reviewing the length of the disqualification. (I note that the WIC Program argues that this office does not have jurisdiction to review the length of the sanction; I will not address that issue because of the following discussion.)

The WIC Program has determined that where a Class A violation results in the diversion of funds away from WIC participants, and away from the purpose of the program, a full three-year disqualification should be imposed. As explained by the WIC director, the program has limited funds, and it has a continuous waiting list. Every dollar which a vendor improperly diverts from the program's purpose is a dollar less available for women, infants, and children who need the benefits. Consequently, the WIC Program sees the diversion of funds away from participants as being serious enough to hold vendors to very nearly a strict liability standard.

Under those circumstances, it cannot be said that the WIC Program's determination was arbitrary or capricious. The WIC Program does not impose a three-year sanction for all Class A violations, just violations which involve a diversion of funds. The Program's main concern in setting the length of the sanction is not the effect on the vendor's business, but the effect of the vendor's violation on the program and its participants. Therefore there is no basis for reversing the action taken by the Program.

I note that even if there [were] a basis for reversing the decision concerning the length of the sanction, petitioners have provided no reason for doing so. Like any store which loses its authorization, there is a negative effect on the business. Petitioners have provided no other reason which would lead an examiner to conclude that their situation is any different than any other businesses which have lost their WIC authorizations; that petitioners were convicted of a federal felony in connection with his actions would make it difficult to give them a lesser sanction period than others who were not even charged with a crime.

## CONCLUSIONS OF LAW

1. Petitioners committed the Class A WIC offense of submitting a WIC draft in a dollar amount in excess of the retail value of the foods for which it was exchanged.

2. Petitioners' conviction in a federal criminal court does not preempt the WIC program from imposing sanctions allowed under WIC rules.

3. The three-year disqualification of petitioners by the WIC program was justified, within the Program's discretion.

The examiner then denied the Respondents' petition to review the disqualification.

Subsequently, pursuant to Chapter 227, STATS., the Respondents petitioned to the trial court for a review of the examiner's ruling. Following briefing, the trial court heard arguments at a hearing on July 26, 1993. The court concluded that the Respondents had incurred sufficient penalty under the federal criminal sanctions and, further, that the WIC program failed to exercise any discretion in imposing the three-year disqualification. Judgment was entered reversing the

examiner's order.[1] The State appeals from this judgment.

## II. STANDARD OF REVIEW

■

In reviewing a trial court's ruling on an administrative decision, our standard of review is the same as that applied by the trial court. *General Castings Corp. v. Winstead,* 156 Wis. 2d 752, 756, 457 N.W.2d 557, 560 (Ct. App. 1990). We, however, review the agency's decision, not the trial court's. *Liberty Trucking Co. v. DILHR,* 57 Wis. 2d 331, 342, 204 N.W.2d 457, 463-64 (1973). Further, the subsections of § 227.57, STATS., delineate the specific scope of both the trial court's and our review of each issue presented by the parties.

---

[1] The trial court stated in its oral decision:

It appears to the Court—it's not a legal word—but it does seem to be overkill on the part of the government, and it seems to me that the department should [use] some discretion rather than automatically imposing the three-year suspension. I do have a serious question about whether or not the Court has the authority other than to remand, but I will not remand but rather dismiss this matter outright. So ordered.

The final judgment upon which this appeal is based, however, makes no mention of dismissing the case:

IT IS ORDERED AND ADJUDGED that the order of the Wisconsin Department of Health and Social Services, dated April 2, 1993, ultimately concluding that the three-year disqualification of petitioner from the WIC program was justified within the program's discretion, be, and the same hereby is, in all respects reversed.

For purposes of this appeal, we conclude the trial court both reversed the agency's ruling and then dismissed the action.

## III. PREEMPTION BY FEDERAL CRIMINAL PROSECUTION

The Respondents contend that the federal criminal prosecution for WIC program fraud preempted the State from disqualifying them from the program as a state administrative sanction. We disagree.

The agency concluded as a matter of law that it was not preempted from disqualifying the Respondents. Our review of whether an agency has correctly interpreted the law is controlled by § 227.57(5), STATS.:

> (5) The court shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or it shall remand the case to the agency for further action under a correct interpretation of the provision of law.

The WIC program, authorized under the Child Nutritional Act of 1966, *see* 42 U.S.C. § 1786 *et seq.*, provides food assistance to women, infants, and children from families with inadequate income. The WIC program is funded by the federal government, but under 7 C.F.R. § 246.3(b) (1991), the United States Department of Agriculture has delegated the administration of the WIC program to the individual states.

Additionally, the federal government delegates to the states the authority to establish sanctions, including disqualification, for vendors who violate WIC program regulations. *See* 7 C.F.R. § 246.12(k) (1991). The federal regulations also provide for federal criminal penalties for anyone that "embezzles, willfully misapplies, steals or obtains by fraud any funds, assets

or property provided" under the program. 7 C.F.R. § 246.23(d) (1991).

While the Respondents argue that the state WIC program is preempted from sanctioning them because of the federal criminal prosecution, the federal regulations expressly defeat such an argument. Under 7 C.F.R. § 246.12(k)(1)(i) (1991), "Food vendors may be subject to sanctions in addition to, or in lieu of, disqualification, such as claims for improper or overcharged food instruments and the penalties outlined in § 246.23, in case of deliberate fraud."

The Respondents pled guilty to misdemeanor fraud in the federal case and the district court sentenced them accordingly. Section 246.12(k)(1)(i) provides that in addition to criminal sanctions, a vendor may be disqualified from the program. Thus, the State, through the WIC program, was fully authorized to institute a separate state administrative action to disqualify the Respondents. Accordingly, the agency correctly interpreted the relevant law in concluding that the WIC program had the authority to levy sanctions in addition to the criminal penalties in the federal prosecution.

## IV. EXCESSIVE AND UNREASONABLE PENALTY

The Respondents next argue that they "will suffer penalties that are harsh, excessive, and unreasonable if State WIC is allowed to succeed in superimposing disqualification over the penalties already imposed by the Federal Court." Our review of this issue is also controlled by § 227.57(5), STATS. As we stated above, the federal regulations allow a vendor who violates the WIC program to be disqualified, as well as face other

779

sanctions. *See* 7 C.F.R. § 246.12(k)(1)(i) (1991). There-
fore, a disqualification cannot be considered either
harsh, excessive, or unreasonable if imposed in addi-
tion to a separate criminal sanction. The agency
correctly interpreted the relevant law. *Cf. State v. Dan-
iels*, 117 Wis. 2d 9, 22, 343 N.W.2d 411, 417-18 (Ct.
App. 1983) ("A sentence well within the limits of the
maximum sentence is not so disproportionate to the
offense committed" so as to be unduly harsh and
excessive.).

## V.  AGENCY DISCRETION IN IMPOSING DISQUALIFICATION

The State argues that "the state WIC program
acted within its authority and discretion in imposing
the disqualification in this case." The Respondents
counter by arguing that the "State WIC's disqualifica-
tion of Petitioners-Respondents would violate
[P]etitioners-Respondents' constitutional rights by
allowing imposition of an unreasonable and arbitrary
penalty." We conclude the agency acted within its dis-
cretion when it disqualified the Respondents from
participating in the WIC program for three years.

The federal government has delegated to the
states the authority to administer the WIC program,
and to determine sanctions for vendors that violate the
program:

> (k)  *Participant and vendor sanctions.* (1) The
> State agency shall establish policies which deter-
> mine the type and level of sanctions to be applied
> against food vendors, based upon the severity and
> nature of the Program violations observed, and
> such other factors as the State agency determines
> appropriate, such as whether the violation repre-
> sented repeated offenses over a period of time,

whether the offenses represented vendor policy or whether they represented the actions of an individual employee who did not understand Program rules, and whether prior warning and an opportunity for correction was provided to the vendor. Vendor offenses which are subject to sanctions shall include at least the following: Providing cash, unauthorized foods or other items to participants in lieu of authorized supplemental foods; charging the State or local agency for foods not received by the participant; and charging the State or local agency more for supplemental foods than other customers are charged for the same food item. The State agency shall provide adequate procedures for vendors to appeal a disqualification from participation under the Program as specified in § 246.18.

(i) Food vendors may be subject to sanctions in addition to, or in lieu of, disqualification, such as claims for improper or overcharged food instruments and the penalties outlined in § 246.23, in case of deliberate fraud.

(ii) The period of disqualification from Program participation shall be a reasonable period of time, not to exceed three years. The maximum period of disqualification shall be imposed only for serious or repeated Program abuse.

. . . .

(v) Prior to disqualifying a food vendor, the State agency shall consider whether the disqualification would create undue hardships for participants.

7 C.F.R. § 246.12(k) (1991).

■

The DHSS has promulgated a three-tier system of sanctions for failing to comply with the WIC program's requirements. *See* WIS. ADM. CODE § HSS 149.06. Section HSS 149.06(1)(a) mandates that a vendor's

authorization for WIC program participation be terminated if the vendor has committed a Class A offense under the regulations.[2] The length of the vendor's disqualification is left to the discretion of the WIC office. WIS. ADM. CODE § HSS 149.06(1)(b) ("A vendor whose authorization is terminated under par. (a) shall be disqualified from WIC for a period of up to 3 years as determined by the state WIC office."). Because the agency's determination is discretionary, the scope of our review is controlled by § 227.57(8), STATS.[3] Thus, we may reverse and remand the case only if we conclude that the agency's exercise of discretion is: (1) "outside the range of discretion delegated to the agency by law;" (2) "inconsistent with an agency rule, an officially stated agency policy or a prior agency practice, if deviation therefrom is not explained to [our] satisfaction by the agency;" or (3) "otherwise in violation of a constitutional or statutory provision." Section 227.57(8), STATS.

We conclude that none of these three discretionary criteria is present in this case. First, the WIC pro-

---

[2] WIS. ADM. CODE § HSS 149.06(1)(a), provides in part:

**HSS 149.06 Failure to comply with program requirements.** (1) CLASS A OFFENSES. (a) The state WIC office shall terminate the authorization of a vendor after giving the vendor reasonable notice and opportunity for a hearing, if the state WIC office finds that the vendor has committed a class A offense as follows . . . .

[3] Section 227.57(8), STATS., provides:

(8) The court shall reverse or remand the case to the agency if it finds that the agency's exercise of discretion is outside the range of discretion delegated to the agency by law; is inconsistent with an agency rule, an officially stated agency policy or a prior agency practice, if deviation therefrom is not explained to the satisfaction of the court by the agency; or is otherwise in violation of a constitutional or statutory provision; but the court shall not substitute its judgment for that of the agency on an issue of discretion.

gram's disqualification of the Respondents is not "outside the range of discretion delegated to the agency." Both § HSS 149.06(1)(b) and 7 C.F.R. § 246.12(k)(1)(i) provide that a vendor may be disqualified for up to three years. *Cf. Daniels*, 117 Wis. 2d at 22, 343 N.W.2d at 417-18 (see discussion *supra*).

Second, we conclude that there is no showing that the disqualification "was inconsistent with an agency rule, an officially stated agency policy or a prior agency practice." Section HSS 149.06(1)(b) mandates that the length of the disqualification is to be "determined by the state WIC office." Nothing occurring in the Respondents' disqualification is inconsistent with the administrative rule's mandate. Nor have the Respondents alleged that their disqualification was inconsistent with an "officially stated policy or prior agency practice." To the contrary, as stated by the hearing examiner: "The WIC Program has determined that where a Class A violation results in the diversion of funds away from WIC participants, and away from the purpose of the program, a full three-year disqualification should be imposed."

Third, there is no violation of a "statutory provision." Section 246.12(k) of the Code of Federal Regulations requires that the "State agency shall establish policies which determine the type and level of sanctions to be applied against food vendors, *based upon the severity and nature of the Program violations, and such other factors as the State agency determines appropriate*." (Emphasis added.) Section 246.12(k) then provides a list of other factors the state agency *could* consider when establishing policies on the type and level of sanctions: "such as whether the violation represented repeated offenses over a period of time, whether the offenses represented vendor policy or

783

whether they represented the actions of an individual employee who did not understand Program rules, and whether prior warning and an opportunity for correction was provided to the vendor." Nothing in the language of § 246.12(k), however, *requires* the state agency to consider these factors.[4]

The "severity and nature of Program violations" forms the basis of the WIC program's three-tiered sanction in § HSS 149.06. As delineated by the director of the state WIC program in her affidavit before the agency examiner:

> (b) The penalty provisions in the HSS 149 rules have been structured by the Wisconsin WIC Program in such a way as to take into account the relative severity of the type of conduct. Differing levels of penalties are set forth in Chapter HSS 149 for items listed as Class A offenses, Class B offenses, and Class C offenses. Class C offenses are the least severe categories of conduct, Class B offenses are an intermediate level of severity of conduct, and Class A offenses are the categories of conduct the Wisconsin WIC Program considers to be the most severe. This particular case involved a type of conduct listed as a Class A offense in rule HSS 149.06.
>
> (c) This Program is not à subsidy program for vendors. It is not a Program providing generalized

---

[4] *But see So v. Ledbetter*, 434 S.E.2d 517, 520 (Ga. Ct. App. 1993) (concluding procedures employed by Georgia Department of Human Resources to disqualify vendor from WIC program were inconsistent with the requirements of 7 C.F.R. § 246.12(k) because: (1) they "considered only whether overcharging had occurred and not 'the severity and nature of the program violations observed' "; and (2) they "did not allow for consideration of whether disqualification of a vendor would create an undue hardship on participants").

financial benefits for participants to spend as they desire. Mere low income will not qualify a person to participate in the WIC Program. This Program is a specialized program designed to provide particular food products for those who have been evaluated as having individual nutritional needs beyond mere poverty. The Wisconsin WIC Program has limited funds. Because of the limited funds, the Wisconsin WIC Program has a continuous waiting list of women, infants, and children who would be eligible for WIC benefits if only more funds existed. Every dollar which a vendor improperly claims in WIC reimbursement is a dollar less available for the Wisconsin WIC Program to pay for actual food products for the women, infants, and children who need them. The Wisconsin WIC Program therefore believes that any conduct involving intentional overcharge for WIC food is an extremely serious situation, deserving of the maximum penalty.

Therefore, we conclude that the DHSS via the administrative rules in § HSS 149.06, properly considered the "severity and nature of the Program violation" as required by § 246.12(k) of the Code of Federal Regulations. We further note that while this court may believe it is more appropriate for the WIC program to apply the suggested factors in § 246.12(k) before it determines the length of a vendor's disqualification, the scope of our review prevents this court from "substitut[ing our] judgment for that of the agency on an issue of discretion." Section 227.57(8), STATS. Accordingly, we conclude DHSS did not violate the statutory provisions raised by the Respondents, when the agency exercised its discretion in disqualifying Respondents for three years.

Additionally, while the Respondents raise concerns under § 227.57(8), STATS., that their constitutional rights are being violated by the discretionary actions of the agency, their argument on this ground is amorphous and insufficiently developed. Accordingly, we need not address the argument. *See State v. Scherreiks,* 153 Wis. 2d 510, 520, 451 N.W.2d 759, 763 (Ct. App. 1989) ("Simply to label a claimed error as constitutional does not make it so, and we need not decide the validity of constitutional claims broadly stated but never specifically argued."); *In re Estate of Balkus,* 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 n.5 (Ct. App. 1985) (court of appeals may decline to review an issue inadequately briefed).

In sum, we reverse the judgment of the trial court that reversed and dismissed the agency action against the Respondents. Further, we remand the matter to the trial court with directions to reinstate the examiner's order upholding the Respondents' three-year disqualification.

*By the Court.*—Judgment reversed and cause remanded with directions.