[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Kaplana Modwadia doing business as Quick Mart Convenience, from a June 23, 2000 final decision of the defendant, commissioner of the department of public health ("the department"), disqualifying the plaintiff vendor from participating in the Women, Infants and Children ("WIC") program of the department for three years.
The plaintiff received notice that the WIC program had disqualified her from the program on November 5, 1999 for violations of the WIC vendor agreement. (Return of Record ("ROR"), Volume I, pp. 48-50.) Pursuant to her request, a hearing was held on January 24, 2000 and February 9, 2000. (ROR, Volumes II, III.) At the hearing, the plaintiff questioned the credibility of the investigator for the department. She also argued that any violations of the WIC vendor agreement had in the past always been adjusted between her and the department. Subsequently, the hearing officer issued a proposed memorandum of decision on April 27, 2000, making the following findings of fact:
 1. At all relevant times, [the plaintiff] was an authorized WIC vendor, d.b.a., Quick Mart Convenience Store, a food store located [in] . . . Waterbury, Connecticut. . . . CT Page 15996
 2. On June 5, 1999, and June 7, 1999, Denise Maldonado, a WIC investigator ("the investigator"), performed compliance purchase investigations at [Quick Mart]. . . .
 3. During the June 5, 1999 investigation, the investigator purchased two 12 oz. boxes of Special K, a WIC-approved cereal. In making this purchase, the investigator presented a WIC voucher for one gallon of milk and 36 ounces of a WIC-approved cereal. . . .
 4. An employee of [the plaintiff] was the person who was working at the store during the compliance purchase on June 5, 1999, and personally handled the transaction. . . .
 5. The voucher that was submitted for the June 5, 1999 purchase charged the WIC program $18.75 for one gallon of milk and 36 ounces of cereal. The actual cost of the two 12 oz. boxes of Special K was $8.78. Thus, the WIC Program was charged for foods not received in exchange for a WIC check. . . .[1]
 6. At the time of the June 5, 1999 purchase, [the plaintiffs] employee did not (1) require the investigator to enter the purchase price in ink on the WIC check; (2) check the WIC program identification card or folder; or, (3) verify the WIC participant's signature. . . .
 7. During the June 7, 1999 investigation, the investigator purchased three 12 oz. cans of frozen Dole pineapple juice concentrate, a WIC-approved food item. . . .
 8. In making this purchase, the investigator used a WIC voucher that authorized her to purchase one gallon of milk, and either three 12 oz. cans of approved frozen concentrate or 138 ounces of fluid WIC-approved juice. . . .
 9. An employee of [the plaintiff] was the person who was working at the store during the compliance purchase on June 7, 1999, and personally handled the transaction. . . . CT Page 15997
 10. The voucher that was submitted for the June 7, 1999 purchase charged the WIC program $8.96 for one gallon of milk and three cans of juice. The actual cost of the three cans of juice was $5.97. Thus, the WIC program was charged for foods not received in exchange for a WIC check. . . .
 11. At the time of the June 7, 1999 purchase, [the plaintiffs] employee did not (1) require the investigator to enter the purchase price in ink on the WIC check; (2) check the WIC program identification card or folder; or, (3) verify the WIC participant's signature. . . .
 12. On June 7, 1999, there was no price on the pineapple juice or on the shelf in front of the juice, or on the freezer door in front of the juice. . . .
 13. There are seven other authorized vendors doing business within one mile of [the plaintiffs] store. . . .
(ROR, Volume I, pp. 6-7.)
Based upon these findings of fact, the hearing officer concluded that the plaintiff had charged the WIC program for foods not actually received in exchange for a WIC check, had failed to have the purchaser enter the purchase price on the WIC check, had not checked the purchaser's WIC identification card at the time of purchase, had not verified the WIC purchaser's proxy signature at the time of purchase, and had not posted WIC food prices on the items themselves or on the shelf or door in front of the item. He found the testimony of the investigator-tester credible and rejected the plaintiff's defense that she was not responsible for the actions of her employee (the actual person at the store register). (ROR, Volume I, p. 8.)
Turning to the proper penalty to be imposed, the hearing officer noted that there were six other WIC vendors within one half mile of the plaintiff's store, so that the proposed disqualification would not create undue hardship for WIC participants. He continued:
 As set forth in § 19a-59c-6(c) of the Regulations, the two instances of charging the WIC program for food items not actually received in CT Page 15998 exchange for a WIC voucher each constitute Class A violations for which [the plaintiff] was properly assessed two separate three year disqualifications. The instances of twice failing to have the participant enter the purchase price in ink on [the] WIC check . . . each constitute separate Class B violations for which [the plaintiff] was properly assessed two warnings. Finally [the remaining charges — checking the purchaser's identification card, verifying her signature, and posting food prices] . . . each constitute a Class D violation for which [the plaintiff] was properly issued five separate warnings.
 Thus, in this matter, the WIC Program acted in accordance with the WIC State Plan, Federal and State regulations, and the WIC Vendor Agreement.
(ROR, Volume I, pp. 8-9.)
 In closing, the hearing officer gave his proposed order as follows:
 Based on the foregoing facts and conclusions, I respectfully recommend to the Commissioner that he hereby affirm each of the sanctions set forth in the Notice of Disqualification. Since Federal WIC Regulations limit disqualifications for WIC abuses to three years, the total period of disqualification is limited to three years for the two Class A violations. Additionally, [the plaintiff] is issued seven separate warnings for the two
Class B and the five Class D violations.
(ROR, Volume I, p. 9.)
Subsequent to the issuance of the proposed memorandum of decision, on May 10, 2000, the plaintiff filed a memorandum with the Commissioner of the department regarding the final decision in the matter. In this memorandum, the plaintiff made two arguments. She claimed that the investigator lacked credibility because her evidence of the transactions did not include the cash register receipts issued at the purchases. The plaintiff further argued that the three-year penalty was excessive. Referencing the federal regulation in effect at that time, 7 C.F.R. § 246.12k(ii), the plaintiff claimed that the department must use CT Page 15999 discretion and must not automatically assess the maximum penalty. (ROR, Volume I, pp. 92-95.)
The matter proceeded to oral argument before hearing officer Donna Brewer. On June 23, 2000, Brewer stated:
 After full consideration of the oral arguments, the written brief, and the complete record, and in accordance with Connecticut General Statutes § 4-180, the undersigned hereby adopts the Proposed Memorandum of Decision issued by Hearing Officer Levenson as the Final Memorandum of Decision in this matter. A true copy of the Proposed Memorandum of Decision is attached hereto and is hereby incorporated by reference as the Final Memorandum of Decision in this matter.
(ROR, Volume I, p. 2.)
The plaintiff has appealed from this final decision.[2]
The standard of review of this appeal has been set forth in Salmon v.Dept. of Public Health Addiction Services, 58 Conn. App. 642, 660-61, cert. granted on other grounds, 254 Conn. 926 (2000):
 We begin our analysis by noting that our review of an agency's factual determination is constrained by the [UAPA]. Specifically, General Statutes § 4-183(j)(5) mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . . We have interpreted the standard of review set forth in the act as limiting our review such that [w]ith regard to questions of fact, it is neither the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . This substantial evidence standard is highly deferential. . . .
(Citations omitted; internal quotation marks omitted.) CT Page 16000
Further, "[e]ven as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . ." (Citations omitted; internal quotation marks omitted.)MacDermid, Inc. v. Dept. of Environmental Protection, 257 Conn. 128, 137
(2001).
The first issue raised by the plaintiff is that the hearing officer erred in crediting the testimony of the investigator when she did not produce the register receipts issued at the time of her purchases. These receipts, it is claimed, would establish exactly what was purchased in each transaction. The hearing officer did have in the record that the investigator had taken certain goods away from the store after tendering the voucher to the clerk. (ROR, Volume I, pp. 40, 44; Volume II, pp. 52-53.) He further had the actual vouchers showing what reimbursement was asked of the WIC office. (ROR, Volume II, pp. 52-53.) Under the substantial evidence test, this is enough to sustain the hearing officer's factual conclusions. Salmon v. Dept. of Public Health Addiction Services, supra, 58 Conn. App. 642; Domestic Violence Servicesof Greater New Haven, Inc. v. FOIC, 47 Conn. App. 466, 470 (1998) ("The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency . . .
The plaintiff's second claim is that the three-year disqualification from the WIC program was excessive. The argument is initially developed from a federal regulation in effect in 1999, 7 C.F.R. § 246.12(k)(1): "The State agency shall establish policies which determine the type and level of sanctions to be applied against food vendors, based upon the severity and nature of the Program violations observed, and such other factors as the State agency determines appropriate . . .
The court agrees with the department, however, that this regulation is mainly concerned with how the level of sanctions is developed, not with the sanction to be applied in an individual case. Barakat v. WisconsinDept. of Health Social Services, 530 N.W.2d 392, 398 (Wis.App. 1995). The states are not mandated to use the examples set forth in the regulation in developing the level or type of sanction. Id.
Another federal regulation in effect in 1999 provided that "[t]he period of disqualification from Program participation shall be a reasonable period of time, not to exceed three years. The maximum period of disqualification shall be imposed only for serious or repeated Program CT Page 16001 abuse." 7 C.F.R. § 246.12(k)(1) (ii); see also Foodland v. State ExRel. WV DHHR, 532 S.E.2d 661 (W.Va. 2000) ("reasonable" means what is right and equitable under all circumstances). At the same time, the state regulation applicable to violations occurring in 1999 provided that: "[s]anctions are to be applied by the state WIC program against vendors based on the nature and severity of violations and the Vendor authorization agreement." Regs., Conn. State Agencies § 19a-59c-6(c). This regulation further provided that "Depending upon the offense, the state WIC program may impose the following: . . . A. Class A.violations: An automatic three-year disqualification shall be assessed for the following violations: . . . (viii) charging the WIC program for foods not received in exchange for a WIC check as determined during compliance purchases or check audits. . . ." (Emphasis in original.) Regs., Conn. State Agencies § 19a-59c-6(c)(2)(A) (viii).
The plaintiff argues that the assessment of the three-year penalty did not take this discretion of the then-applicable federal regulation and a portion of the state regulation into account. The record, however, shows that the hearing officer in the proposed memorandum of decision merely stated that the plaintiff was "properly assessed" two separate three year disqualifications. (ROR, Volume I, p. 9.) In addition, the issue of the length of the penalty was never argued before this hearing officer. (See ROR, Volume III, pp. 52-54.) Subsequent to the proposed memorandum of decision, the plaintiff filed a brief raising the issue of the length of the penalty. Hearing officer Brewer, however, merely adopted the language of the proposed memorandum of decision. (ROR, Volume I, p. 2.)
Under these circumstances the court cannot find that the final decision did not properly consider the factors as set forth in the federal and state regulations.
 If the penalty meted out is within the limits prescribed by law, the matter lies within the exercise of the [agency's] discretion and cannot be successfully challenged unless the discretion has been abused. . . . Sentencing is an inherently fact bound inquiry. In an administrative appeal, a reviewing court can do no more, on the factual questions presented, than to examine the record to determine whether the ultimate findings were supported, as the statute requires, by substantial evidence. . . . In other words, [o]ur ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .
CT Page 16002 (Citations omitted; internal quotations omitted.) Wasfi v. Dept. ofPublic Health, 60 Conn. App. 775, 790-91 (2000), cert. denied,255 Conn. 932 (2001); see also Swales v. Department of Public Health, Superior Court, judicial district of New Britain, Docket No. 498140 (December 18, 2000, Satter, J.T.R.), a case where a penalty assessed by the department was challenged as arbitrary. The court rejected the claim in Swales because "the penalty imposed by the Department is within the range of penalties authorized by [the statute]. The findings upon which the penalty was imposed are fully supported by substantial evidence in the record." What Judge Satter concluded in Swales applies here as well: "The court cannot conclude the Department abused its discretion in imposing the civil penalty it did."
The case of Nunez v. Garcia, Superior Court, judicial district of New Britain, Docket No. 504460 (May 2, 2001, Cohn, J.), appeal pending, SC 16569,[3] is not applicable to the plaintiff's situation. In Nunez, the court noted that 7 C.F.R. § 246.12k(ii) and the initial portion of § 19a-59c-6 of Regulations of Connecticut State Agencies both required the exercise of discretion in the setting of the penalty for Class A violations. A later portion of § 19a-59c-6 of Regulations of Connecticut State Agencies, however, made the purchase of cigarettes and charging the WIC program for foods not received "automatic" three-year disqualifications. The court found that the hearing officer had based his penalty solely on the phrase "automatic disqualification" and ordered a remand to the department to consider the "nature and severity of the violations."
The plaintiff's case is distinguishable because here the hearing officers gave no indication that they relied solely upon the language in the regulation calling for an automatic disqualification. Indeed, the initial hearing officer stated that he was acting in accordance with both state and federal regulations in determining that the penalty was appropriate, and the second hearing officer adopted this statement in issuing the final decision. (ROR, Volume I, pp. 2, 9.) Since the disqualification as imposed by the department was not in error, the appeal is dismissed.
Henry S. Cohn, Judge